**R.W. ROWLAND, Plaintiff,**

v.

**Mahamed FAYED, et al., Defendants.**

**Civ. A. No. 86–0073.**

United States District Court, District of Columbia.

May 21, 1987.

Robert M. Beckman, David M. Kirstein, Beckman & Kirstein, Washington, D.C., for plaintiff.

Robert E. Jordan, Kevin J. Brosch, Steptoe & Johnson, Washington, D.C., for plaintiff on Sanctions Order.

David E. Kendall, Douglas R. Marvin, George Ellart, Williams & Connolly, Washington, D.C., for Fayed and Fayed.

Allen V. Faber, Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for The Washington Times.

## ORDER

JOYCE HENS GREEN, District Judge.

For the third time this Court is asked to consider whether the filing of a jurisdictionally-defective complaint warrants the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure. Plaintiff Rowland, a foreign national, filed the above-captioned case in this federal court against the defendants Fayed, also foreign nationals, and The Washington Times, a citizen of this country. Defendants moved to dismiss for lack of diversity and also sought Rule 11 sanctions against plaintiff for having improperly brought suit in federal court. Plaintiff thereafter voluntarily dismissed his suit, and opposed the motion for sanctions on the grounds that the Court lacked jurisdiction to impose them, and that the jurisdictional defect did not warrant sanctions because it resulted from mere inadvertence rather than bad faith. On May 28, 1986, the Court entered an Order granting defendants' motion and directing the parties to submit additional pleadings as to the amount of the sanction to be imposed. Plaintiff took this directive as an invitation to again argue that the Court was without jurisdiction to impose sanctions; that an inadvertent failure to recognize the absence of diversity when foreign nationals are on both sides of a lawsuit is not conduct deserving of sanctions; and that, if sanctions were imposed, they should be imposed on plaintiff's counsel, Mr. Robert Beckman and Mr. David Kirstein, as the error was theirs and not plaintiff's. In an Order dated September 16, 1986, the Court amended its earlier Order, exonerating plaintiff from all liability for the improper filing and imposing a sanction of $500 jointly against Mr. Beckman and Mr. Kirstein instead.

To date, the Court has apparently succeeded only in convincing plaintiff's counsel that it possesses jurisdiction to impose sanctions. Mr. Beckman and Mr. Kirstein have filed a second motion to alter, amend or vacate, in which they argue, for the third time, that their inadvertent mistake is not worthy of sanctions. In addition, they contend that, notwithstanding their earlier argument to the Court that "[t]he [jurisdictional] error identified by the Court [in its May 28 Order] was the error of plaintiff's attorney," [1] they had no notice that they were subject to sanctions and they are entitled to a hearing before any sanctions may be imposed upon them.

■ Movants Beckman and Kirstein continue to insist that sanctions are inappropriate absent at least some showing of bad faith, and that the punishment of inadvertent errors serves no real purpose. As the Court stated in its May 28 Order, however, the 1983 amendments to Rule 11 no longer require a showing of bad faith; rather, the amended Rule 11 incorporates a due dil-

1. *See* Plaintiff's Opposition to the Fayed Defendants' Response to the Court's Order of May 28, 1986, at 3.

igence standard by requiring parties and attorneys to make "reasonable inquiry" before signing pleadings or motions, and is "intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions." Notes of Advisory Committee, ¶ 2. The purpose served by imposition of sanctions in a case such as this, therefore, is to emphasize the obligation of attorneys to exercise due care in the preparation and filing of pleadings.[2]

■ Movants next take issue with the Court's conclusion that "the lack of diversity was apparent on the face of the pleading," May 28 Order at 5, arguing that "the particular diversity rule[ ] regarding foreign parties [is] neither well-known nor apparent," but is instead "a little known judge-made rule" representing "an obscure and counterintuitive twist in [the] law." *See* Motion to Alter, Amend or Vacate at 6 & 8. This circuit, however, has taken a quite different view of the rule, noting recently in *Eze v. Yellow Cab Co. of Alexandria, Va., Inc.*, 782 F.2d 1064, 1065 (D.C. Cir.1986), that "under *long-held precedent,* diversity must be 'complete'" and thus "[a] diversity suit ... may not be maintained in federal court by an alien against a citizen of a state and a citizen of some other foreign country." (Quoting *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)) (emphasis supplied). In addition, the *Eze* Court cited two decisions out of other circuits—one from the Fifth Circuit in 1975, another from the Second Circuit in 1980—standing for the same proposition.

■ A situation similar to that presented here occurred in *Wymer v. Lessin,* 109 F.R.D. 114 (D.D.C. 1985). There, two foreign nationals filed suit in this Court against several defendants upon information and belief that each defendant was a citizen of some state of this country. On the day of trial, counsel for defendants learned that one of his clients was a foreign national at the time plaintiffs filed their complaint and thus that there was no diversity. Judge Parker thereafter imposed sanctions upon defendants' counsel for failing to make a reasonable inquiry as to the citizenship of his client. He concluded that Rule 11 obligated counsel to interview his client to determine her citizenship, and counsel's failure to do so violated the standards set out in the rule. *Id.* at 115–16. Significantly, there was no suggestion in *Wymer* that the complete diversity rule in suits involving foreign nationals was the slightest bit doubtful; on the contrary, as soon as the one defendant's foreign citizenship was disclosed, all parties and the Court recognized the lack of diversity jurisdiction. *Id.* at 115. Indeed, if the rule itself were as obscure as movants suggest, then presumably defendants' counsel in *Wymer* would not have been under an obligation to investigate his client's citizenship in the first place, for such an obligation can only arise where counsel would be expected to recognize the jurisdictional significance of his client's citizenship. Thus, if a failure to determine a client's citizenship in a suit involving foreign nationals can occasion sanctions under Rule 11, then certainly a failure to recognize the absence of diversity jurisdiction when the citizenship of all parties is known is no less deserving of sanctions.[3]

---

**2.** Movants have seized on this Court's characterization of their error as "inadvertent," and argue that "[s]anctions do nothing to help individuals avoid inadvertent mistakes." Motion of Beckman and Kirstein to Alter, Amend or Vacate the Court's Order of September 16, 1986, at 4. Webster's defines inadvertent to mean not only "unintentional," but also "heedless, negligent, inattentive." Webster's Third New International Dictionary 1140 (1968). That liability should attach to such conduct is a commonplace of our legal system, and is predicated at least in part on the theory that liability will deter future

carelessness on the part of both the person punished and others generally.

**3.** *Wymer* is also significant in at least one other respect. Movants cited Judge Parker's decision in *Greenfield v. District of Columbia,* 623 F.Supp. 47 (D.D.C.1985), for the proposition that Rule 11 sanctions are appropriate only where the offending party has demonstrated at least some bad faith. In *Wymer,* however, which was also written by Judge Parker, there was no suggestion of bad faith; indeed, the opinion specifically states that the sanctions were predi-

■ Finally, movants argue that due process requires notice and a hearing before Rule 11 sanctions may be imposed, and that they were not afforded such process here. The Court is hard pressed to understand movants' contention that prior to the entry of the September 16 Order, they "were not told that the Court was considering imposing sanctions on them." Motion to Alter, Amend or Vacate at 9. To begin with, Rule 11 itself placed them on notice that they could be subject to sanctions. The rule requires an attorney to sign pleadings or motions in his or her own name; specifies that such a signature constitutes a certificate that the attorney has read the pleading and performed a "reasonable inquiry" to ensure that it is well grounded in fact and is warranted by existing law or a good faith argument for a change in the law; and provides that courts shall sanction those who sign pleadings in violation of the rule. Movants do not claim to be unaware of the rule or its requirements. Moreover, in papers filed after the entry of this Court's May 28 Order, movants argued on behalf of plaintiff that "[t]he error identified by the Court was the error of plaintiff's attorneys," and that "there is no doubt that the fault lies with the plaintiff's attorneys and not with plaintiff ... [thus] the attorneys and not Mr. Rowland should be punished." Plaintiff's Opposition to Defendants' Response to the Court's Order of May 28, 1986, 1–3. They therefore invited the Court to follow the decision in *Weisman v. Rivlin*, 598 F.Supp. 724 (D.D.C.1984), in which Judge Gesell imposed sanctions on an attorney rather than the party for the filing of a complaint which on its face revealed a lack of diversity. In light of their own representations, movants' argument that they lacked notice that sanctions might be imposed against them is perplexing, to say the least.

■ With respect to their right to a hearing prior to the imposition of sanctions, this circuit has recently explained that "[w]hile it is perhaps conceivable that due process could require a hearing on sanctions under ... rule [11]," courts must " 'to the extent possible limit the scope of sanction proceedings to the record.' " *McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C.Cir.1986) (quoting Notes of Advisory Committee to Rule 11, ¶ 18). Such limitations are necessary to ensure that "the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation." [4] Notes of Advisory Committee to Rule 11, ¶ 18. Movants nevertheless request a hearing in order to demonstrate that they acted diligently in researching and preparing the complaint, that the foreign diversity rule is little known among the bar generally, that they are experienced federal practitioners who had never encountered the rule previously, and that opposing counsel spent two days researching it in preparing their motion to dismiss. Such a showing, however, would essentially be irrelevant. Movants had knowledge of the foreign citizenship of plaintiff and two of the defendants, and most certainly should have known of the complete diversity rule. If they had any doubts whatsoever as to the applicability of that rule in a suit involving foreign nationals, those doubts could have been put to rest by consulting the most basic of reference works. Moore's Federal Practice, for example, states quite succinctly that "[w]hen there are alien parties on both sides of the controversy jurisdiction will be found lacking even though they are citizens of different foreign countries," 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.75 (2d ed. 1986); West's Federal Digest devotes an entire

---

cated on counsel's failure to make reasonable inquiry.

**4.** Those efficiencies may also be jeopardized where, as here, litigants insist on rearguing issues decided adversely to them. Certainly the fact that movants have now had three opportunities to press their case as to why they should

not be held liable for the defective filing is relevant to, and undercuts, their claim that a hearing on the question is necessary. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1178 (D.C. Cir.1985) (concluding that due process satisfied where parties had opportunity to brief issue of sanctions on appeal).

keynote to the subject of "Controversies between a state or citizen thereof and foreign states, citizens or subjects," and lists no less than seventeen cases in which courts have either held or noted that diversity is lacking when foreign nationals are' on both sides of a suit,[5] 47 West's Federal Practice Digest 3d 543–50 (1985); and Wright, Miller and Cooper note that since the Supreme Court's 1829 decision in *Jackson v. Twentyman*, 27 U.S. (2 Pet.) 136, 7 L.Ed. 374 (1829), "the federal courts consistently have denied jurisdiction over suits between aliens." 13B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3604 (2d ed. 1984). Contrary to movants' contention, the diversity rule regarding foreign nationals is neither little-known nor obscure, and more importantly, even the most cursory research could not have failed to disclose it. To the extent movants' proffer of evidence suggests that they relied on their extensive federal court practice and their lack of familiarity with the rule concerning foreign nationals, such reliance simply fails to comport with Rule 11's reasonable inquiry requirement. No federal court practitioner could be excused for not knowing the diversity requirements in suits involving citizens of this country; in a suit between foreign nationals, an attorney's knowledge of the long-standing requirement of complete diversity generally should at the very least have raised a question as to whether the rule applies where foreign nationals are on both sides of the case, and that question could have been resolved with an absolute minimum of effort. The complete failure to even consider

the question, however, or having considered it, to undertake some slight investigation, could not be deemed reasonable and would not satisfy the obligations imposed by Rule 11. Under these circumstances, therefore, the Court concludes that a hearing is neither necessary nor required.

Accordingly, for all the foregoing reasons, it is this 21st day of May, 1987,

ORDERED that the motion of Beckman and Kirstein to alter, amend or vacate the Court's Order of September 16, 1986, be and it hereby is denied.

---

5. *See Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786 (2nd Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *Field v. Volkswagenwerk A.G.*, 626 F.2d 293 (3rd Cir.1980); *De Wit v. KLM Royal Dutch Airlines, N.V.*, 570 F.Supp. 613 (S.D.N.Y.1983); *Dadzie on behalf of Int'l Kal-Sahara Corp. v. Leslie*, 550 F.Supp. 77 (E.D.Pa.1982); *Trans World Hospital Supplies, Ltd. v. Hospital Corp. of America*, 542 F.Supp. 869 (M.D.Tenn.1982); *Cunard, Ltd. v. Abney*, 540 F.Supp. 657 (S.D.N.Y.1982); *Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764 (D.Kan. 1981); *R.W. Sawant & Co. v. Ben Kozloff, Inc.*, 507 F.Supp. 614 (N.D.Ill.1981); *Fosen v. United Technologies Corp.*, 484 F.Supp. 490 (S.D.N.Y.), *aff'd*, 633 F.2d 203 (2nd Cir.1980); *Plastistarch Int'l Corp. v. Plastistarch Corp., Ltd.*, 484 F.Supp. 1312 (S.D.N.Y.1980); *Johansson v. Nunez*, 473 F.Supp. 1270 (W.D.La.1979); *Arab Int'l Bank & Trust Co., Ltd. v. Nat'l Westminster Bank, Ltd.*, 463 F.Supp. 1145 (S.D.N.Y.1979); *Japan Petroleum Co. Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831 (D.Del.1978); *Edlow Int'l Co. v. Nuklearna Elektrarna Krsko*, 441 F.Supp. 827 (D.D.C.1977); *Neeld v. American Hockey League*, 439 F.Supp. 459 (W.D.N.Y.1977); *Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y.1976); *Koupetoris v. Konkar Intrepid Corp.*, 402 F.Supp. 951 (S.D.N.Y.1975), *aff'd* 535 F.2d 1392 (2nd Cir.1976).