**TOM GROWNEY EQUIPMENT, INC.,**
**Plaintiff–Appellee,**

v.

**SHELLEY IRRIGATION**
**DEVELOPMENT, INC.,**
**Defendant,**

**Appeal of STOMPOLY & EVEN, P.C.**

No. 86–15024.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1987.

Decided Dec. 18, 1987.

K. Alexander Hobson, Fish, Duffield, Miller, Young, Adamson & Alfred, Tucson, Ariz., for plaintiff-appellee.

James L. Stroud, Stompoly & Stroud, Tucson, Ariz., for appellant.

Before ANDERSON, FERGUSON and NOONAN, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The law firm of Stompoly & Even ("appellant") appeals a judgment in favor of Tom Growney Equipment, Inc. ("Growney") which imposed $5,000 in sanctions against the firm pursuant to Fed.R.Civ.P. 11. The sole subject of this appeal concerns the propriety of the district court's imposition of sanctions under Rule 11 against appellant for making frivolous claims, one of which was allegedly made for coercive purposes. The principal contention of appellant is that the imposition of Rule 11 sanctions by the district court without affording them prior notice and a meaningful opportunity to be heard violates due process. We agree.

## I. BACKGROUND

The underlying case involved a rental agreement between Growney and Shelley Irrigation Development, Inc. ("Shelley").

Growney brought an action against Shelley seeking recovery of unpaid rental installments and late charges on a John Deere Model 670A motorgrader. The complaint also sought a prejudgment order of replevin directing Shelley to return the motorgrader to Growney. The court entered an order on November 13, 1984, directing the marshal to take control of the motorgrader and deliver it to Growney.

On December 11, 1984, the Honorable William D. Browning held a hearing to decide whether Growney was entitled to

possession of the motorgrader. Judge Browning entered an order and made certain findings. He found that the Motion for a Preliminary Injunction was moot because Growney was already in possession of the equipment. Judge Browning further concluded that Shelley's failure to make rental payments entitled Growney to possession; that the evidence expressly negated the existence of an enforceable contract to purchase; and that the evidence, including payment in the amount of $5,725, confirmed the existence of a rental contract.

After the hearing, Shelley filed its answer and counterclaim. Count One of Shelley's counterclaim alleged a breach of contract. Count Two alleged an intentional and bad faith breach of contract and requested compensatory and exemplary damages. Count Three alleged fraud, consumer fraud, and scheme and artifice on the part of the plaintiff and asked for treble damages under the Arizona RICO Act.

Both parties moved for summary judgment on their claims. On August 15, 1986, the district court granted Growney's Motion for Summary Judgment and denied Shelley's crossmotion. On September 30, 1986, judgment was entered in favor of Growney, including a $5,000 award of attorneys' fees assessed, *sua sponte*, against appellant as a sanction under Rule 11.[1] There is no hint in the record that appellant had any notice sanctions were being considered. On October 10, 1986, appellant filed a Motion to Alter or Amend Judgment and for Reconsideration attacking the imposition of sanctions against them. On October 20, 1986, the district court issued a Memorandum of Decision and Order stating essentially that it was unable to find evidence to support Shelley's counterclaim. A hearing on the Motion to Alter or Amend was held November 3, 1986. At the hearing, the court declined to specifically state what conduct was being sanctioned.[2]

1. Fed.R.Civ.P. 11 provides in pertinent part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

2. The most relevant part of the colloquy is as follows:

> MR. COREY: Could I ask the Court for a bit of clarification, because I need to—I guess I need to discuss that with Mr. Kirschner, and that is in the Court's order I was not certain what it was that was specifically being charged as a violation of Rule 11. Was it specifically and only filing of the counterclaim?
>
> THE COURT: No. That is one part of it, and it was not clear to me that an adequate investigation had been made based on the

> facts and so forth. But then after a hearing by Judge Browning, and the discovery as it progressed, we come up to very shortly before trial where the counterclaim is still being very aggressively pushed.
>
> \* \* \* \* \* \*
>
> One of the things that bothers me is that, you know, affidavits are very hard to really get behind them, because I see affidavits all the time. Many of them contain matters that don't even pertain to the lawsuit, intended to affect the judge's decision. But I would be really interested in knowing just what transpired between Mr. Shelley and Mr. Kirschner. What was told to him; what he told Mr. Kirschner as the case progressed.
>
> And you have asked for a hearing, and I think you are entitled to it, and I think you did exactly what I would have done—asked for a hearing to present your side of it. And I am willing to give you a hearing, but I am not going to tell you what to present. That will be up to you.
>
> MR. COREY: My only concern, Your Honor, is—and the reason I asked the question— as I read Rule 11 it provides a sanction for the violation of the rule which is a rule that talks about signing the pleadings. That's why I asked exactly what it is that is the subject. I think we have to have some notice as to what it is Mr. Kirschner is being charged with before we can make a decision as to whether we want to proceed with further evidence.
>
> In other words, as I read Rule 11—perhaps I am—

On December 5, 1986, the district court issued its Memorandum of Decision and Order denying the Motion to Alter or Amend. It was in this Memorandum that the district court for the first time expressed its opinion that appellant failed to conduct a reasonable inquiry into the factual basis for its fraud and breach of contract allegations. Furthermore, the court's Memorandum cites portions of two depositions in support of its Order assessing Rule 11 sanctions.[3] These depositions, however, were never brought to appellant's attention prior to this time. Moreover, the depositions were not in the possession or record of the court at the time it issued its Rule 11 sanctions.[4] Appellant, thus, had no idea that these statements would be relied upon by the court in assessing sanctions against them.

## II. DISCUSSION

In the absence of extraordinary circumstances, procedural due process requires notice and an opportunity to be heard *before* any governmental deprivation of a property interest. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). The form which those procedural protections must take is determined by an evaluation of all the circumstances and an accommodation of competing interests. *See Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). The individual's right to fairness and accuracy must be respected, as must the court's need to act quickly and decisively.

In considering the imposition of a penalty upon attorneys, the Supreme Court has cautioned that like "other sanctions, attor-

ney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

We have required notice and an opportunity to be heard in sanctioning attorneys pursuant to authority other than Rule 11. *See T.W. Elec. Service, Inc. v. Pacific Electric Contractors*, 809 F.2d 626, 638 (9th Cir.1987) ("Notice and a hearing should precede imposition of a sanction under [28 U.S.C.] § 1927"); *F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986) ("Due process further requires that parties subject to sanctions have sufficient opportunity to demonstrate that their conduct was not 'undertaken recklessly or wilfully'" (quoting *Toombs v. Leone*, 777 F.2d 465, 472 (9th Cir.1985)); *Miranda v. Southern Pacific Transp. Co.*, 710 F.2d 516, 522 (9th Cir.1983) (due process requires opportunity to prepare defense and explain questionable conduct at a hearing); *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983) (same). *See also* Fed.R.App.P. 46(c) (Courts of appeal may not impose disciplinary sanctions on attorneys until "after reasonable notice and an opportunity* to show cause to the contrary, and after hearing, if requested").

The Advisory Committee Note to Rule 11 states that the procedures in imposing sanctions "obviously must comport with due process requirements," and further instructs a party seeking sanctions to "give notice to the court and the offending party promptly upon discovering a basis for doing so." Up until now we have only

---

THE COURT: Pleadings are not limited to an answer and a counterclaim.

MR. COREY: I understand that, but if there is some other pleading that is the subject of the sanction?

THE COURT: I think the whole problem, like I said, after the hearing in front of Judge Browning, and that Judge Browning made some findings as to the two contracts, the initial contract and the purchase contract,—after that there was discovery; then there was a motion for summary judgment. It was opposed. There was a countermotion for summary judgment, and so forth. All those were

signed by Mr. Kirschner, and I am interested in a little background on that.

3. These depositions were those of Ned Shelley, Jr. and Ned Shelley, Sr., which tended to contradict the allegations of scheme or artifice to defraud on the part of Growney, as well as cast disrepute on the allegation that the security agreement was a binding sales contract.

4. While the depositions were taken on February 28, 1985, the district court had no knowledge of them until they were submitted to the court on November 4, 1986.

touched upon the due process safeguards when imposing Rule 11 sanctions; however, we did state that:

> ... in situations where a complaint or other paper is obviously and recognizably frivolous when filed, or as circumstances lead the court to strongly suspect that a filed paper may not be well-grounded in fact or law, the court should *at a minimum* provide notice to certifying attorney that Rule 11 sanctions will be assessed at the end of trial if appropriate.

*Matter of Yagman,* 796 F.2d 1165, 1183–84 (9th Cir.), *reh'g denied,* 803 F.2d 1085 (1986) (Emphasis in original).[5]

In *Miranda,* we explained the reasons why notice and an opportunity to be heard are required before an attorney may be sanctioned:

> These procedural requirements will ensure that: (1) the attorneys will have an opportunity to prepare a defense and to explain their questionable conduct at a hearing; (2) the judge will have time to consider the severity and propriety of the proposed sanction in light of the attorneys' explanation for their conduct; and (3) the facts supporting the sanction will appear in the record, facilitating appellate review.

710 F.2d at 522–23.

Invoking Rule 11, the district court imposed sanctions against appellant in its Order of September 30, 1986. No notice was given of the court's intention to impose sanctions and no opportunity was offered to explain the allegedly improper filings. Consequently, the imposition of Rule 11 sanctions was in violation of the procedural safeguards provided by the due process clause.

Respondent argues that the subsequent hearing on the Motion to Alter or Amend gave the appellant an opportunity to oppose the sanctions and present arguments as to why those sanctions should not have been imposed; thus, satisfying any due process requirements. We disagree.

To begin with, there exists in this case no extraordinary or exigent circumstances which would warrant satisfying due process by a subsequent hearing. Secondly, we are hard pressed, as we assume appellant must have been, to determine specifically, either before or during the subsequent hearing, the grounds on which the district court was relying in imposing the Rule 11 sanctions. The seriousness of the court's refusal to specify the grounds for the Rule 11 sanctions is illustrated by its Order of December 5, 1986, which, for the first time, refers to the pattern and practice allegation in appellant's counterclaim. Appellant neither had notice nor an opportunity to explain the appropriateness of this allegation either before or during the subsequent hearing. Likewise, appellant had neither notice nor an opportunity to explain the two depositions which the district court relied on in its December 5, 1986 Order in refuting the merit of appellant's claims. While any explanation that appellant may have given in respect to these grounds may well have been ineffectual, due process, at a minimum, requires notice and the *opportunity* to be heard. *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).[6]

---

**5.** This notice requirement is consistent with the Rule 11 amendments' major purposes of streamlining and avoiding delay and unnecessary expense in litigation. Early notice can deter continuing violations, thereby saving monetary and judicial resources. *Matter of Yagman, supra,* 796 F.2d at 1184. Furthermore, we distinguish ourselves from other courts that have found the "notice" requirement satisfied by the mere presence of the rule. *See, e.g., Donaldson v. Clark,* 819 F.2d 1551, 1560 (11th Cir.1987) (Rule 11 alone should constitute sufficient notice if attorney submits a complaint without any basis in fact); *Rowland v. Fayed,* 115 F.R.D. 605, 608 (D.D.C.1987); *Lepucki v. Van Wormer,* 765 F.2d 86, 88 (7th Cir.1985), *cert. denied,* 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985). In so doing, we make a distinction between the general notice about sanctions and notice that sanctions are being considered.

**6.** We note, in passing, that the record as developed does lend some factual support to the district court's finding of Rule 11 violations. However, in light of the due process violations, we decline to speculate what evidence might have been adduced if there had been proper notice and a meaningful evidentiary hearing.

Finally, the error in assessing Rule 11 sanctions without prior notice was not cured by the subsequent hearing on the Motion to Alter or Amend for the reason that the burden of proving the sanctions were not justified was erroneously placed on appellant. *See, e.g., Textor v. Board of Regents of Northern Illinois University,* 711 F.2d 1387, 1395–96 (7th Cir.1983).

## III. CONCLUSION

We hold that the district court did not have the power to impose monetary sanctions pursuant to Fed.R.Civ.P. 11 against appellant without affording him procedural due process. In this case, the district court did not provide appellant with notice or an opportunity to show cause to the contrary before imposing sanctions. Similarly, we find that the subsequent hearing was also insufficient in providing appellant with procedural due process. The judgment imposing Rule 11 sanctions against appellant is

REVERSED and the sanction order is VACATED.