In re: Ezella M. TAYLOR, Debtor.

Dina TSAFAROFF; Evelyn Simbas, Appellants,

v.

Ezella M. TAYLOR, Appellee.

Ezella M. TAYLOR, Appellant,

v.

Dina TSAFAROFF; Evelyn Simbas; William Little, Appellees.

William LITTLE, Appellant,

v.

Ezella M. TAYLOR; David A. Gill, Trustee in Bankruptcy, Appellee.

Nos. 87–6312, 87–6319 and 87–6367.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1989.

Decided Sept. 5, 1989.

---

Leon L. Vickman, Leon L. Vickman, a Law Corp., Encino, Cal., Michael R. Sment, Rich & Ezer, Los Angeles, Cal., for appellants.

Ezella M. Taylor, Pasadena, Cal., in pro per.

Before HUG, HALL and WIGGINS, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

In No. 87–6319, Debtor Ezella M. Taylor ("the debtor" or "Taylor") timely appeals from a BAP decision, which affirmed the judgment of the Bankruptcy Court for the Central District of California (Judge Geraldine Mund, presiding), that Taylor's Creditors, Dina Tsafaroff and Evelyn Simbas

(collectively "the creditors" or "Tsafaroff"), had conducted a valid foreclosure sale of Taylor's home. The bankruptcy court also decided, and the BAP affirmed, that William Little ("Little"), who was the sole bidder for Taylor's $100,000 house with a bid of $22,099.94 (subject to a $20,000 first mortgage), was a bona fide purchaser ("BFP") without notice of Taylor's pending bankruptcy petition.

In Nos. 87–6312 and 87–6367, respectively, Tsafaroff and Little timely appeal from the portion of the decision below in which BAP ruled that the bankruptcy court (Judge Barry Russell, presiding) did not have the power to enter an order lifting the automatic stay of 11 U.S.C. § 362 in one bankruptcy proceeding, that would be effective in lifting the stay imposed upon filing by the same debtor of subsequent petitions. Tsafaroff and Little also appeal from the portion of the BAP judgment which affirmed an award of sanctions ordered by Judge Mund against Little's attorney, Leon L. Vickman, and a denial of their request for sanctions against Taylor and her attorney.

## I

The underlying facts of this case are largely undisputed, and are adequately set forth in the BAP opinion, *Little v. Taylor (In re Taylor)*, 77 B.R. 237, 238–39 (Bankr. 9th Cir.1987). The BAP opinion also chronicles the labyrinthine procedural history of this case. As necessary, the following discussion will contain amplification of particular segments of the case history, an understanding of which is critical to the resolution of some of the issues presented.

## II

This court is in as good a position as the BAP to review the findings of the bankruptcy court. *In re Bialac*, 712 F.2d 426,

429 (9th Cir.1983). Accordingly, we review the bankruptcy court's factual determinations for clear error. *Id.; In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989). The legal conclusions of the bankruptcy courts, on the other hand, are subject to de novo review. *In re American Mariner Indus., Inc.*, 734 F.2d 426, 429 (9th Cir.1984).

■ Our review of the sanction orders, entered by the bankruptcy court pursuant to Bankruptcy Rule 9011, is conducted under the same standard applicable to an order of sanctions under Rule 11 of the Federal Rules of Civil Procedure. *In re Chisum*, 847 F.2d 597, 599 (9th Cir.), *cert. denied sub nom. Mortgage Mart Inc. v. Rechnitzer*, — U.S. —, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). That is, factual findings relied on by the court to establish a violation of the rule are reviewed under the clearly erroneous standard, the legal conclusion that the facts constitute a violation of the rule is reviewed de novo, and the appropriateness of the sanction imposed is reviewed for an abuse of discretion. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986).

## III

We must first decide whether the BAP erred in concluding that Judge Russell's order, which purported to lift the automatic stay imposed upon Taylor's filing of her first Chapter 13 petition, was ineffective in lifting the stay imposed upon filing of Taylor's second Chapter 13 petition. Based on a literal reading of the terms of the order, the bankruptcy court ruled that Judge Russell's "default judgment" of October 11, 1985, was not intended to apply to Taylor's second Chapter 13 petition.[1] *Taylor*, 77 B.R. at 239–40. The BAP affirmed this "factual finding" as not clearly erroneous. *Id.* at 240. Relying on two bankruptcy court decisions, *In re Norris*, 39 B.R. 85, 87 (Bankr.E.D.Pa.1984), and *In re Surace*, 52

---

1. In relevant part, the order purported to have the "res judicata" effect of lifting (or preventing the imposition of) an automatic stay "for a period of six months from the date of entry" in "any subsequent Chapter 13 cases and proceedings and [in] any subsequent conversions" of Bankruptcy Case No. 85–53242.

Judge Mund also invoked the doctrine of *contra proferentem* to construe the order against the creditors because their attorney, Leon Vickman, had drafted the order signed by Judge Russell.

B.R. 868, 870 (Bankr.C.D.Cal.1985), the BAP went on to affirm Judge Mund's ruling that Judge Russell's stay lift order did not have the preclusive effect urged by Tsafaroff and Little, holding that "it is doubtful that a bankruptcy court can enter" a stay lift order that would have res judicata effect in all proceedings brought under Chapter 13 by the same debtor. *Taylor,* 77 B.R. at 240.

Objecting to this sweeping statement by the BAP, Tsafaroff and Little urge this court to decide the broad question whether a bankruptcy court order lifting the automatic stay in favor of a creditor in one bankruptcy proceeding is ever effective to lift the stay imposed upon filing by the same debtor of a subsequent petition in bankruptcy. They argue that such stay lift orders are, in general, entitled to both claim preclusive [2] and issue preclusive effect in subsequent Chapter 13 proceedings.

■ We need not reach the broad question framed by Tsafaroff and Little [3] because there is a second and more fundamental ground upon which to affirm the BAP conclusion as to the res judicata effect of Judge Russell's stay lift order. It is a fundamental principle of the law of former adjudication that only "valid and final" judgments are afforded claim preclusive or issue preclusive effect. *See* Restatement (Second) of Judgments §§ 17, 27 (1982). One of the prerequisites for a "valid" judgment is that the rendering court have jurisdiction of the subject matter of the action. *Id.* at § 1.

Under the law of this circuit, the bankruptcy court retains subject matter jurisdiction to *interpret* orders entered prior to dismissal of the underlying bankruptcy case, *Beneficial Trust Deeds v. Franklin (In re Franklin ),* 802 F.2d 324, 326–27 (9th Cir.1986), and to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying action, *see USA Motel Corp. v. Danning,* 521 F.2d 117 (9th Cir.1975). The bankruptcy court does not have jurisdiction, however, to grant new relief independent of its prior rulings once the underlying action has been dismissed. *See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Property Builders, Inc.),* 699 F.2d 963, 964 (9th Cir.1982). *See also Spacek v. Thomen (In re Universal Farming Indus.),* 873 F.2d 1334, 1335 (9th Cir.1989) (dismissal of underlying bankruptcy case moots all issues directly involving the debtor's reorganization, but not those ancillary to the bankruptcy).

■ In this case, the bankruptcy court lacked subject matter jurisdiction to render a valid judgment granting Tsafaroff's request for relief from the stay that arose upon filing of Taylor's first bankruptcy petition, because Judge Russell did not enter his "default judgment" in the adversary action until after *both* the adversary action and the underlying bankruptcy petition had been dismissed by final order of Judge Lasarow.[4] The following chronology demonstrates that Judge Russell exceeded his jurisdiction in granting Tsafaroff's request for stay relief.

As noted in the BAP opinion, *Taylor,* 77 B.R. at 238, Taylor commenced her first bankruptcy action, Case No. LAX–85–53242, by filing a Chapter 13 petition on June 26, 1985. After Taylor proposed a plan of reorganization on July 26, 1985, and noticed a meeting of listed creditors by order of August 18, 1985, Tsafaroff and Simbas commenced an adversary action, with Reference No. MX5–53583 and Case No. LAX 85–53242, by filing a "Complaint for Relief from Automatic Stay" on September 6, 1985. On September 23, 1985,

---

**2.** Tsafaroff's and Little's "claim preclusion" argument appears to be a variant of their further contention that a debtor should only be allowed to file one petition in bankruptcy to obtain discharge with respect to a given set of creditors' claims.

**3.** We do, however, expressly disapprove the sweeping statement of the BAP regarding the res judicata effect of stay lift orders. The BAP clearly reached way beyond the facts of the instant case to announce a generally applicable rule regarding preclusion.

**4.** It is clear under the Bankruptcy Rules, that a judgment or final order is not effective until entered in the bankruptcy court docket. Bankr.R. 9021, 5003.

Judge William J. Lasarow held a confirmation hearing in Case No. LAX 85–53242 and dismissed Taylor's Chapter 13 petition from the bench. On September 27, 1985, Taylor filed her second Chapter 13 petition and plan, in Case No. LAX 85–54806, both of which were served on the listed creditors on the same date.

On October 2, 1985, Judge Russell held a hearing on Tsafaroff's complaint in the adversary action. Only the creditors' attorney, Leon Vickman, made an appearance at the October 2 hearing. Although Vickman reported that Taylor's first bankruptcy case had been "dismissed from the bench on the 23rd of last month," Judge Russell indicated that he would approve a stay lift order, which was to be drafted and submitted by Vickman, that would be "binding in 13's" for six months. Judge Russell adjourned the hearing without any specific ruling from the bench.

The next day, October 3, 1985, Judge Lasarow entered his final "Order Dismissing Chapter 13 Petition," which purported to apply to Case No. LAX 85–53242, citing Taylor's failure to file a feasible plan as "good cause" for dismissal. Judge Lasarow's October 3 order provided in relevant part:

1. That the order for relief resulting from the filing of the petition be set aside and vacated; and

2. That the petition herein be, and the same hereby is dismissed pursuant to Title 11, Section 1307(c) of the United States Code, *and all adversary proceedings in these cases are moot and dismissed.*

(Emphasis added). Despite Judge Lasarow's prior order of dismissal, Judge Russell proceeded on October 11, 1985, to file the stay lift order that had been submitted by Vickman on October 10 and denominated a "Default Judgment for Hearing Held on October 2, 1985."

This "default judgment" was clearly entered after Judge Lasarow had dismissed both the underlying bankruptcy action and the adversary action itself. It is difficult to imagine a clearer case for declaring a purported "judgment" invalid. We conclude that the bankruptcy court exceeded its jurisdiction and that the stay lift order Judge Russell entered on October 11, 1985, was not a "valid judgment" for purposes of preclusion law, but rather a "legal nullity." *See* Restatement (Second) of Judgments at 19, 28 (1982). The BAP did not err in affirming the bankruptcy court ruling to the effect that Judge Russell's order was not res judicata in Taylor's second bankruptcy action.

## IV

■ We must next decide whether the BAP erred in concluding that Taylor's creditors, Tsafaroff and Simbas, could not be held liable for damages for a "willful violation" of the automatic stay. As this court recently observed, the automatic stay of 11 U.S.C. § 362 is "intended to give 'the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions.'" *Bloom,* 875 F.2d at 226 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5840). In 1984, Congress added subsection (h) to 11 U.S.C. § 362[5] to establish penalties for willful violations of the automatic stay.

We recently adopted the following test for a "willful violation" of the automatic stay:

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the *defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant* to whether the act was "willful" or whether compensation must be awarded.

**5.** Section 362(h) provides that:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

*Bloom,* 875 F.2d at 227 (emphasis added) (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.),* 83 B.R. 89, 165 (Bankr.D.D.C.1988)). In *Bloom,* we affirmed a bankruptcy court judgment that a creditor who knew of the bankruptcy petition, yet proceeded with an action in federal district court to hold the debtor in contempt and to obtain specific performance of the debtor's obligations under a consent decree, had "willfully violated" the automatic stay within the meaning of 11 U.S.C. § 362(h). *Bloom,* 875 F.2d at 227.

Under the rule of *Bloom,* the conduct of the creditors in this case was a "willful violation" of the stay that was automatically imposed upon Taylor's filing of her second bankruptcy petition on September 27, 1985. The record is replete with evidence, including a direct admission, that the creditors and their attorney actually knew of the second filing by the time of the foreclosure action. In addition, Judge Mund specifically found that the creditors had "violated" the stay by proceeding with the foreclosure sale without having obtained effective relief from the stay.

A contrary holding would be possible only if we were to conclude that it is a defense to a claim of "willful violation of the stay" that, based on Vickman's advice, the creditors entertained a good faith belief in the validity and applicability of Judge Russell's October 11, 1985, stay lift order. Even before Congress enacted section 362(h), however, good faith reliance on the advice of counsel was no defense to a contempt action brought to remedy willful violations of the stay. *See Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors),* 550 F.2d 47, 57–58 (2d Cir.1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977) [6]; *see also Bloom,* 875 F.2d at 227 (good faith

belief in right to property is irrelevant to "willfulness" of act of appropriateness of compensation award).

As Judge Mund observed in her Memorandum Opinion of August 4, 1986, "the stay is a broad provision which requires a creditor to seek a *judicial* determination of its right to proceed." (Emphasis added). It would contravene a fundamental policy of federal bankruptcy law to allow creditors to proceed with actions possibly subject to the stay merely upon the advice of an *attorney* that they are entitled to proceed. Accordingly, because "good faith reliance on the advice of counsel" is not a defense, Taylor is entitled to an award of actual damages, costs, and attorney fees to the extent she was injured by the "willful violation." *See INSLAW,* 83 B.R. at 165 (award of damages, costs and fees is mandatory upon finding of "willful violation of the stay"); *see also* 2 Collier on Bankruptcy ¶ 362.12 (15th ed. 1989) (same).

## V

■■■■ We turn next to Taylor's argument the bankruptcy courts erred in finding that Little was a bona fide purchaser at the foreclosure sale conducted by Taylor's creditors. As a general rule, actions taken in violation of the automatic stay are void and without effect. *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.),* 754 F.2d 811, 816 (9th Cir. 1985). This rule is limited, however, by the protections afforded a bona fide purchaser of real estate by bankruptcy and state real property laws. *See* 11 U.S.C. § 549(c); 2 Collier on Bankruptcy ¶ 362.11 (15th ed. 1989). Whether, as Taylor argues, the bankruptcy court erred in finding that William Little was a bona fide purchaser without notice of the commencement of the

---

**6.** We note that the court in *In re Fidelity Mortgage Investors* affirmed a judgment under which both the creditors *and their attorney* were held liable for damages, fees, and costs for instituting a state court action to foreclose on materialmen's liens despite the fact that a stay had been imposed when the debtor filed a Chapter 11 petition. 550 F.2d at 58.

Because the record does not clearly reveal what role the creditors' attorney played in the

conduct of the foreclosure sale, we do not here decide whether Vickman is jointly liable with Tsafaroff and Simbas for the "willful violation of the stay" that occurred in this case. We do not foreclose the possibility, however, that on remand Taylor will be able to establish that Vickman engaged in conduct amounting to a "willful violation of a stay" within the meaning of 11 U.S.C. § 362(h).

bankruptcy case is a question of fact subject to reversal only for clear error. *See Bloom*, 875 F.2d at 227.

■ As Taylor's attorney so aptly put it in the proceedings below, it does seem to be an "amazing coincidence" that William Little, a seasoned real estate investor whom the creditors' attorney admittedly represented on numerous occasions during an 18–month period between mid–1985 and late 1986, was the ONLY bidder—with a successful bid that may have won him as much as $80,000 in equity—at the foreclosure sale conducted by the creditors on January 16, 1986.

Based on the bankruptcy court's credibility determinations and the evidence of record, however, it does not appear that the bankruptcy court clearly erred in finding that Little did not have notice of Taylor's pending bankruptcy petition. Judge Mund had before her only Vickman's testimony, and his sworn affidavit, to the effect that he did not know Little was interested in or had bid on Taylor's property until several weeks after the foreclosure sale. There was, moreover, no deposition or trial testimony from Little about his attorney-client relationship with Vickman or any communications he may have had with Vickman regarding the Taylor foreclosure. Although the BAP cryptically noted that Vickman was representing both the creditors and Little at the time of the foreclosure sale in January of 1986, *Taylor*, 77 B.R. at 238 n. 1, it does not cite, and our review of the record does not disclose, any

evidence that Vickman actually advised or assisted Little in connection with the foreclosure. We have no choice but to conclude that the bankruptcy court did not clearly err in finding that Little was a bona fide purchaser without notice of the commencement of the bankruptcy proceedings.

## VI

The final issues presented are whether the BAP erred in affirming: (1) the bankruptcy court award of sanctions against Little's attorney, and (2) the bankruptcy court decision not to award sanctions against Taylor and her attorney.

## A

The BAP concluded that Judge Mund did not abuse her discretion by imposing $500 in sanctions against Little's attorney, Leon L. Vickman, under Bankruptcy Rule 9011. *Taylor*, 77 B.R. at 240–41. In particular, the BAP agreed with Judge Mund's findings that Vickman had multiplied the proceedings by bringing an ex parte motion seeking declaratory relief that can only be obtained within the Bankruptcy Rules in an adversary action, and by bringing in bad faith, without justification, and for the improper purpose of increasing the cost of the litigation, a Motion to Alter or Amend a prior judgment of the court. *Id.* at 241.

On appeal, Little [7] and Tsafaroff rely on *In re Yagman*, 796 F.2d 1165, 1183–84 (9th Cir.1986), *modified* 803 F.2d 1085 (9th Cir.),

---

7. The BAP also held that Little lacked "standing" to appeal because he was not "aggrieved" by Judge Mund's sanction order which was imposed only on Little's attorney. *Taylor*, 77 B.R. at 240 (citing *Huenergardt v. Huenergardt*, 218 Cal.App.2d 455, 32 Cal.Rptr. 714 (Ct.App.1963). Other circuits have adopted a standing requirement for appeals from Rule 11 sanction orders. *See e.g., Marshak v. Tonetti*, 813 F.2d 13, 21 (1st Cir.1987). Prior to the BAP opinion in this case, however, no court in the Ninth Circuit had ever followed or even acknowledged the "standing" rule of *Huenergardt*.

It appears that we have never squarely addressed the issue of a party's "standing" to appeal a sanction order entered against the party's attorney. *See Mesirow v. Pepperidge Farm, Inc.*, 703 F.2d 339, 345 (9th Cir.) (assuming without deciding that a client can appeal from an order

imposing sanctions on his attorney), *cert. denied* 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983). As in *Mesirow*, 703 F.2d at 345, this court may never have had to reach the "standing" issue because we have consistently held that an order imposing sanctions upon counsel is final and appealable by the person sanctioned when imposed. *See Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548 (9th Cir.1986), *cert. denied sub nom., Barton v. E.F. Hutton & Co., Inc.*, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). In many cases, waiting until a final judgment on the merits is entered against the client in the underlying action would render untimely an appeal by the client on the sanctions issue. *See* Fed.R.App.P. 4(a).

As did the *Mesirow* panel, we assume without deciding that Little has standing to appeal the sanction order entered against Vickman.

*cert. denied sub nom. Real v. Yagman,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987), to challenge these rulings by the bankruptcy courts only on the ground that the sanctions were imposed without adequate notice. One possible reading of Little's and Tsafaroff's argument, based as it is only on *Yagman,* is that they were denied prior notice "that Rule 11 sanctions [would] be assessed at the end of trial if appropriate," the minimum due process requirement of which we spoke in that case. 796 F.2d at 1184.

Since *Yagman,* we have expanded the scope of due process protections afforded attorneys before imposition of Rule 11 sanctions. *Tom Growney Equip., Inc. v. Shelley Irrigation Development, Inc.,* 834 F.2d 833, 836 (9th Cir.1987). In *Tom Growney Equip.,* we vacated a sanction order entered without notice of the court's intention to impose sanctions, and without a meaningful opportunity for the sanctioned attorney to explain his allegedly improper filings. *Id.* Specifically, we held that the requirements of due process were not met by a subsequent hearing, in which the court failed to specify the grounds for the Rule 11 sanctions and, thus, deprived the attorney of any meaningful opportunity to explain the appropriateness of his conduct. *Id.*

The state of the record, and Little's and Tsafaroff's failure to cite *Tom Growney Equip.,* leave us unsure about the nature of their due process claim. It appears, moreover, that Little and Tsafaroff neither raised their due process objection, nor asked for clarification or modification of the sanction order in the bankruptcy court. We decline to decide whether the requirements of due process were met with respect to Judge Mund's sanction order. Instead, we remand this issue to the bankruptcy court for reconsideration of its sanction order after affording Vickman a meaningful opportunity to explain his conduct.

## B

■ Finally, we must decide whether Judge Mund erred by denying Tsafaroff's and Little's motion seeking sanctions against Taylor and her attorney, Andrew E. Smyth, for filing a second overlapping bankruptcy petition. Citing its own decision in *In re Chisum,* 68 B.R. 471, 473 (Bankr. 9th Cir.1986), *aff'd* 847 F.2d 597 (9th Cir.), *cert. denied sub nom. Mortgage Mart, Inc. v. Rechnitzer,* —— U.S. ——, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988), the BAP held on appeal that multiple Chapter 13 petitions may be brought by the same debtor so long as they are filed in good faith. *Taylor,* 77 B.R. at 241. Because it concluded that there was no evidence to support a finding that Taylor's second Chapter 13 petition was filed in bad faith, the BAP affirmed Judge Mund's decision declining to impose sanctions on Taylor or her attorney. *Id.*

The creditors and BFP argue that repetitive filings constitute an abuse of the bankruptcy system. Invoking bankruptcy court case law and other out-of-circuit authority, Little and Tsafaroff essentially urge us to adopt a *per se* rule against multiple Chapter 13 filings. We have previously declined to do so. *See e.g., Nash v. Kester,* 765 F.2d 1410, 1415 (9th Cir.1985). Although recognizing that, when examined together, successive filings may be evidence of bad faith, *see Downey Savings & Loan Ass'n v. Metz, (In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987), we recently held that "Multiple Chapter 13 bankruptcy filings are legally justified 'as long as each new plan is proposed in good faith.'" *Chisum,* 847 F.2d at 599 (citing *Nash,* 765 F.2d at 1415). In *Chisum,* we further held that sanctions under Bankruptcy Rule 9011 for multiple filings are inappropriate absent a finding that the debtor's successive petitions were filed in bad faith. *Id.*

There was no such finding in this case. A thorough review of the record, moreover, discloses that the bankruptcy court did not clearly err in concluding that Tsafaroff and Little failed to produce any evidence to support a finding of bad faith. Accordingly, an award of sanctions against Taylor or her attorney would have been inappropriate.

## VII

We conclude that the BAP judgment must be REVERSED insofar as it upheld the bankruptcy court decision that the creditors and their attorney did not willfully violate the automatic stay imposed upon filing by Taylor of her second Chapter 13 petition. The case is REMANDED to determine the extent of Taylor's injuries and to assess damages, costs, and attorney's fees, as provided by 11 U.S.C. § 362(h). On remand, the bankruptcy court shall also reconsider its sanction order of August 4, 1986, after affording attorney Vickman an opportunity to explain the conduct for which he was sanctioned. We further note that it remains to be determined on remand whether Little, who may have given "less than present fair equivalent value" when he purchased Taylor's home, obtained only a lien on Taylor's property pursuant to 11 U.S.C. § 549(c) (1982). Except as otherwise indicated in the foregoing opinion, the BAP judgment is in all other respects AFFIRMED. The parties shall bear their own costs.