519 So.2d 836 (1988)
SIERRA CLUB, et al.
v.
LOUISIANA DEPARTMENT OF WILDLIFE & FISHERIES, et al.
No. CA-8022.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1988.
Writs Denied March 18, 1988.
*837 Donald E. Puckett, Baton Rouge, for appellant, Louisiana Dept. of Wildlife & Fisheries.
Joseph E. LeBlanc, Jr., Eric E. Jarrell, Milling, Benson, Woodward, Hillyer, Pierson & Miller, James A. Burton, Susan F. Clade, Simon, Peragine, Smith & Redfearn, John R. Peters, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for intervenor and appellant.
Michael Osborne, Osborne & McComiskey, New Orleans, for appellees.
William J. Guste, Jr., Atty. Gen., Gary L. Keyser, John B. Sheppard, Jr., Ian Douglas Lindsey, William G. Davis, Asst. Attys. Gen., New Orleans, for intervenor, State of La.
Before GULOTTA, C.J., and WARD and WILLIAMS, JJ.
GULOTTA, Chief Judge.
The primary question confronting us in this appeal is whether the Louisiana Wildlife and Fisheries Commission must follow public bidding procedures before it grants a party the right to take fossil clam and oyster shell deposits from State owned water bottoms. Because we conclude that these contracts involve mineral rights which must be leased through public bids, we affirm that portion of a judgment declaring three negotiated leases unlawful.
The lakes and coastal waters of Louisiana are rich in deposits of fossil oyster and clam shells. When dredged and processed, these shells are commercially useful, especially as a building material for roads and levees. A large industry has developed to exploit this resource, and the Wildlife and Fisheries Commission, as the agency empowered to manage State owned water bottoms, has granted exclusive rights to private companies to extract the shells in return for paying royalties to the State at a stated price per cubic yard of material taken. For decades, the Commission has confected these dredging leases by negotiating directly with the companies without publicly advertising for bids from all interested parties.
As a public interest group concerned with Louisiana's natural resources, the Sierra Club filed this suit for declaratory judgment to invalidate three shell dredging leases granted by the Commission.[1] Plaintiffs alleged that the leases were void on three grounds: (1) that the Commission had granted the dredging rights without public bidding as required by LSA-R.S. 41:1211 et seq., the Public Lease Law; (2) that one of the lessees was an Alabama corporation contrary to LSA-R.S. 56:425, which restricts leases of State owned water bottoms to Louisiana residents and corporations; and (3) that the leases unlawfully permitted the lessees to remove shells from water bottoms instead of only reef formations as provided by LSA-R.S. 56:441(B).
In a motion for summary judgment, plaintiffs also argued that the leases affected an area in excess of "one million seven hundred forty thousand acres" and thereby violated LSA-R.S. 56:432, which limits leases of water bottoms to no more than one thousand acres to any person, partnership, or corporation. In further support of their arguments for public bidding, plaintiffs contended that clam and *838 oyster shell deposits on State water bottoms are "mineral resources" that can only be leased pursuant to LSA-Const. Art. IX, § 5 and LSA-R.S. 30:156, which require public bidding for minerals and mineral rights owned by the State and its agencies.
In opposition to plaintiffs' motion and in support of their own cross motion for summary judgment, the intervening shell dredging companies and the Commission contended that the leases had been validly confected pursuant to a statutory exception to the public bidding laws. According to the companies, LSA-R.S. 56:441 sets forth a detailed procedure for the Commission to follow in granting shell dredging leases to "any person", without any public bidding requirements or limitation on the area to be leased.[2] They also cited LSA-R.S. 56:471 as a statutory basis for dredging Rangia clam shells.[3] The companies contended that these statutes authorize the Commission to negotiate agreements to remove both clam and oyster shell deposits from State owned reefs as well as water bottoms.
On the motions for summary judgment, the trial judge held the three leases unlawful based on the following declarations of law: (1) that LSA-R.S. 56:441 applies only to reef formations and does not vest the Commission with the right to transfer shell deposits from non-reef formations, i.e., water bottoms; (2) that the 1,000 acre territorial limitation contained in LSA-R.S. 56:432 applies to leases for removal of shell deposits granted by the Commission; (3) that the Louisiana residency requirement of LSA-R.S. 56:425(A) likewise applies to shell dredging leases; and (4) that any lease by the Commission for the taking of shell deposits is subject to the public bidding procedures set forth in LSA-R.S. 30:156, dealing with mineral leases.
On appeal by the shell dredging companies, the parties have advanced essentially the same arguments raised in the trial court. The Attorney General of Louisiana has intervened on appeal in support of plaintiffs' contentions.

STATUTORY AUTHORIZATION FOR SHELL DREDGING
At the outset, we find merit to the shell dredgers' contention that LSA-R.S. *839 56:441 and 56:471 authorize the Commission to grant any person the right to take both clam and oyster shell deposits from both reefs and water bottoms.
Although LSA-R.S. 56:441 speaks only of "reefs" and does not specifically mention "water bottoms", in Gorham v. Mathieson Alkali Works, 210 La. 462, 27 So. 2d 299 (1946), the Supreme Court held that the Conservation Commission of Louisiana had authority to grant permits for the removal of clam shell deposits from navigable water bottoms in Calcasieu Parish. The Gorham court recognized a history of letting contracts for the taking of oyster and clam shells pursuant to regulations and statutes constituting the Commission as the department of government with authority to manage the water bottoms of the State. Among the authorities cited in the opinion was Act 42 of 1914, the precursor to LSA-R.S. 56:441. Based on the Gorham decision, we interpret LSA-R.S. 56:441 as authority for the Commission to permit shell dredging on State owned water bottoms as well as reefs.
We find further authority for shell dredging in LSA-R.S. 36:609. This statute deals with the powers and functions of the Department of Wildlife and Fisheries. In pertinent part, LSA-R.S. 36:609(C)(1) provides that the office of Coastal and Marine Resources of this Department shall:
"(1) Perform the functions of the state relating to the administration, operation, and law enforcement of programs, including research, relating to oysters, water bottoms, and seafoods, including but not limited to the regulation of the oyster, shrimp, and marine fishing industries, the leasing of and regulations of the use of water bottoms for the cultivation and propagation of oysters, and the dredging of shells, sand, gravel and fill materials ... and the collection of the severance tax on shrimp, oysters, shells, sand, gravel, and fill materials severed from State water bottoms [Emphasis ours]".
Reading this statutory provision together with the Gorham opinion, LSA-R.S. 56:441 and 56:471, we conclude that the trial judge erred in declaring that LSA-R.S. 56:441 does not vest the Commission with the right to transfer the privilege of taking shell deposits from non-reef formations.
We further conclude that the trial judge erred in restricting shell dredging leases to the one thousand acre territorial limitation of LSA-R.S. 56:432 and to the Louisiana residency requirement of LSA-R.S. 56:425.
Both LSA-R.S. 56:432 and LSA-R.S. 56:425 are found in a subpart of Title 56 dealing with oyster and oyster industries. The Supreme Court has recently noted that this subsection "... provides for the leasing of water bottoms to oyster lessees and the designation and regulation of other areas for the taking of oysters without leases." State v. Powell and Jones, 515 So.2d 1085 (La.1987). Indeed, in setting forth the territorial limitation, LSA-R.S. 56:432 speaks of a "lessee who owns or operates more than one canning plant in this state". Similarly, LSA-R.S. 56:425(D) speaks of boundary disputes "between lessees of bedding grounds". This phraseology, in the context of the entire statutory scheme, demonstrates that the residency requirement and the 1,000 acre limitation apply only to the leasing of beds and grounds for oyster cultivation.
Although LSA-R.S. 56:441 is found in the same statutory sub-part dealing with oysters, it is a singular, self-contained provision addressing fossil shell dredging, an activity entirely different from the oyster cultivation. In construing LSA-R.S. 56:441, therefore, we do not read the restrictions on the live oyster industry in pari materia with this section on shell dredging since they are not "upon the same subject matter." See LSA-C.C. Art. 17. Accordingly, we conclude that the territorial limits and residency requirements for leasing water bottoms to oyster lessees do not apply to grants of rights to take shell deposits under LSA-R.S. 56:441 and LSA-R.S. 56:471.

PUBLIC BIDDING
The crucial issue confronting us, however, is whether the Commission must comply *840 with public bidding procedures in exercising its statutory authority to grant persons the right of taking shell deposits.
Public bidding laws are founded on a policy of protecting the citizens and taxpayers of this State. Martin v. La. Stadium & Exposition Dist., 349 So.2d 349 (La.App. 4th Cir.1977). Generally, the State and its subdivisions must follow public bidding procedures,[4] unless a statute expressly exempts them from doing so. Arnold v. Bd. of Levee Com'rs, 366 So.2d 1321 (La.1978); Hall v. Rosteet, 247 La. 45, 169 So.2d 903 (1964).
Although the parties acknowledge that public bidding is the favored method for letting State contracts, the shell dredging companies and the Commission contend that LSA-R.S. 56:441 and LSA-R.S. 56:471 are statutory exceptions to the State's general policy. According to the companies, these specific statutes empower the Commission to grant shell dredging rights through a negotiation process so long as it follows the minimum safeguards set forth in the statutes to protect the interests of the State. On the other hand, plaintiffs and the Attorney General contend that the trial judge properly required public bidding under LSA-R.S. 30:156 since the right to extract fossil shells from State owned water bottoms is a mineral right.[5] We find merit to the arguments in favor of public bidding.
LSA-Const. Art. IX § 5 provides that no conveyance or lease involving minerals or mineral rights owned by the State shall be confected "without prior public notice or public bidding as shall be provided by law". Thus, LSA-R.S. 30:121 et seq.which deal with the development and production of minerals, oil, and gas on state lands, including water bottomsprovide for public bidding when the State and its agencies lease mineral rights.
In support of their argument that the rights to remove shell deposits are mineral rights subject to LSA-R.S. 30:156, plaintiffs cite the uncontroverted affidavit of Barry Kohl, an adjunct university professor of earth sciences, who stated that "... clam and oyster deposits in coastal Louisiana are properly considered in both geological and paleontological senses to be within the definition of minerals ... [and] are also commonly referred to as minerals in informed, non-technical usage." Indeed, the shell companies' own exhibit, a report on the dredging industry compiled by the Louisiana Shell Producers Association, states that shells are "99% calcium carbonate".
Even more persuasive from a legal standpoint is LSA-R.S. 31:4, which provides that the Louisiana Mineral Code applies to rights to remove shells from the land:
"The provisions of this Code are applicable to all forms of minerals, including oil and gas. They are also applicable to rights to explore for or mine or remove from land the soil itself, gravel, shells, subterranean water, or other substances occurring naturally in or as a part of the soil or geological formations on or unlying the land."
Significantly, the Mineral Code also contains a number of provisions dealing with leases of the rights to explore for and *841 produce minerals. See LSA-R.S. 31:114-148.
Although LSA-R.S. 31:4 does not equate shells with minerals, it is clear that the right to remove shells from the land is tantamount to a "mineral right" within the meaning of the Louisiana Mineral Code as well as LSA-Const. Art. IX § 5, which provides that no conveyance or lease "... involving minerals or mineral rights owned by the State shall be confected without prior public notice or public bidding as shall be provided by law."
Accordingly, when we read LSA-Const. Art. IX, § 5, LSA-R.S. 31:4, and LSA-R.S. 30:121 et seq., in pari materia, we conclude that the trial judge properly applied the public bidding requirements of LSA-R.S. 30:156 to shell dredging leases. Although certain specific provisions in LSA-R.S. Title 30 dealing with minimum royalties and delayed rentals for oil, gas, and other minerals do not apply to shell dredging, the Commission must at least adhere to the public advertising and bidding requirements for State agencies under LSA-R.S. 30:156 in granting the right to remove shell deposits.
In so holding, we distinguish Arnold v. Bd. of Levee Com'rs, supra, cited by the shell dredging companies to support their argument that the Commission may negotiate shell dredging leases under an exception to public bidding requirements. In Arnold, the Supreme Court construed LSA-R.S. 38:1235.2, which authorized the Orleans Levee Board to sell or lease its lakefront property "under such terms and conditions and by such methods as said board may deem proper...." The Court held that this statute expressly exempted the Levee Board from complying with the requirements of the Public Lease Law, and that the Board could negotiate a lease of its land without public bidding. In the instant case, LSA-R.S. 56:441 and 56:471 contain no such broad grant of authority to the Commission to dispose of the shells in any manner it deems appropriate. Furthermore, the Supreme Court in Arnold was not confronted with a grant of the State's mineral rights for which public bidding is constitutionally required. Accordingly, the Arnold case is not authority for doing away with public bidding in shell dredging contracts.
We further reject the argument that the leases in the instant case were entered into with full "public notice" within the meaning of LSA-Const. Art. IX, § 5, which requires "public notice or public bidding as shall be provided by law" when the State leases mineral rights. The exhibits attached to the motions in the trial court indicate only that the Commission issued news releases and published agendas of its meetings listing shell dredging as one of the scheduled topics for discussion by the Commission. This publication falls short of the formal public advertising and bidding procedures for mineral leases. Furthermore, the depositions, affidavits, and minutes of the meetings in the record demonstrate that the Commission negotiated only with the intervening shell dredging companies. Although we cannot speculate whether any other companies would have been willing to pay the State a higher price per cubic yard of shell extracted than intervenors, a reasonable conclusion can be reached that possibly other parties might have been interested in submitting bids for these lucrative contracts.
We likewise reject the argument of the companies and the Commission that all three departments of State government have for decades acquiesced in a system of granting shell dredging rights without public bidding. It is true that the Commission has a history of negotiating the dredging leases and that the Supreme Court in Gorham v. Mathieson Alkali Works, supra, did not address the issue of public bidding. Nonetheless, the instant case is the first one directly dealing with the public bidding of shell dredging leases since the adoption of the 1974 Constitution and the Louisiana Mineral Code. We conclude, therefore, that the Commission's prior customs and practices, no matter how well intentioned and longstanding, cannot continue when they directly conflict with current laws requiring public bidding for grants of the right to remove shell deposits.
*842 In addition to the legal requirements for public bidding, another public policy compels us to invalidate the shell dredging leases in this case. LSA-Const. Art. IX, § 1 sets forth a public policy to protect Louisiana's natural resources:
"The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy."
In light of this Constitutional provision, the Supreme Court has recognized that the State owns land under navigable waters within its limits in "public trust" for the people. Save Ourselves v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
In discharging its statutory responsibilities over state owned water bottoms, the Commission has granted exclusive, long term shell dredging leases to a few companies[6] without the benefit of public bidding. When the present leases in this case expire in 1996-1997, the dredging companies have options to renew their rights to exploit this valuable resource into the next century. Furthermore, the shell dredging rights granted in this state are extensive. According to an affidavit of George Douglass, Jr., the president of Louisiana's Shell Producers Association, the Louisiana shell industry annually generates approximately $400 million in economic transactions and contributes $2-3 million in royalty and severance taxes to the State. In 1985 alone, over six million cubic yards of shell were extracted from Louisiana's waterbottoms.
Because of the magnitude of these contracts, it is imperative that a State agency avoid even the slightest appearance of impropriety. Accordingly, we conclude that the Commission is required to adhere to the safeguards of public bidding to insure the best possible contracts for the benefit of the people of this State. Only by granting these long term dredging rights through public bids can our government fully protect the present and future economic interests of our State and uphold the public trust in these valuable resources for all our citizens.
Accordingly, we reverse and set aside that portion of the judgment which restricts shell dredging to reef formations only. We further reverse and set aside those portions of the judgment that apply the one thousand acre territorial limitation of LSA-R.S. 56:432 and the Louisiana residency requirement of LSA-R.S. 56:425(A) to shell removal leases granted by the Commission. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Two of the leases involve shell dredging in Louisiana's central coast area including Atchalalaya, Vermilion, Four League and East and West Cote Blanche Bays in Vermilion, New Iberia, St. Mary, and Terrebonne Parishes. The first lease, dated September 29, 1981, was granted to Radcliff Materials, Inc., whose successor is Dravo Basic Materials Company, Inc. The second lease, dated May 18, 1982, was granted to Radcliff (now Dravo) and Lake Charles Dredging and Towing Company, Inc.

The third lease, dated May 18, 1982, involves shell dredging in Lake Pontchatrain and Lake Maurepas. The lessees are Radcliff (now Dravo), Louisiana Materials Company, Inc., and Pontchartrain Materials Corp.
All the leases have fifteen year terms with options in favor of the lessees to extend the leases for two successive five year periods.
[2] LSA-R.S. 56:441. Grant of right to take oyster shell deposits from shell reefs; duration of grant; renewal; charges; damages; forfeiture of right; bond

A. The commission may sell and grant to any person the right and privilege of taking shell deposits from any of the shell reefs within the boundaries of this state and located in or on the borders of the Gulf of Mexico, or any of the bays, lakes, inlets, or waterways connected with or emptying into the Gulf, or into any of such bays, lakes or inlets.
B. These rights and privileges described in Subsection A may be sold and granted by the commission for a primary term not in excess of fifteen years, and at the discretion of the commission, with the privilege of renewing the contract for a period not exceeding an additional then years, at a fixed price for each cubic yard of shell which may be taken from the reef. The price shall not be less than seven and one-half cents per cubic yard. Payment for the shells taken each month shall be made during the succeeding month. The person to whom the right and privilege is sold and granted shall supply and provide all of the boats, barges, machinery, tools, and implements necessary to take and remove shells from the reefs without cost, expense, or liability of any kind to the commission. The person to whom the right or privilege is sold and granted is responsible for all damage of any kind by him, his agents, directors, employees, whether the damage is to the property of the state or to the property of any person. The contract shall provide for the forfeiture of the right and privilege upon the failure of the person to whom it is sold and granted to make payment under the terms and within the time provided in the contract for the shells or shell deposits which may be taken from the reef. The commission shall make such other stipulations in the contract as deemed necessary or proper to protect the interest and property of the state, to enforce the rights of the state, and to compel compliance with the obligations assumed or to be assumed. The commission shall require a bond of not less than one thousand dollars, executed by the surety company authorized to do business in this state, to secure the faithful performance by the persons of the obligations assumed.
[3] LSA-R.S. 56:471. Ownership of water bottoms

A. All water bottoms suitable for clamming within the state shall remain public with respect to clams and shall be subject to any and all restrictions contained herein.
B. Nothing in this Subpart shall in any way affect the dredging of Rangia clam shells as presently authorized.
[4] Thus, under LSA-R.S. 41:1211 et seq. (the Public Lease Law), the State must follow public bidding requirements in leasing public lands for general purposes, "... other than for oil, gas, or other mineral purposes and development...." Likewise, under LSA-R.S. 38:2211 et seq. (the Public Bid and Public Contracts Law), bidding is required for public work contracts. The Attorney General's brief cites several other statutory provisions for the public bidding of contracts involving timber on State lands (Title 41), street and drainage improvements by municipalities and parishes (Title 33), navigational improvements (Title 34), and public printing (Title 43).
[5] LSA-R.S. 30:156 requires public bidding for the lease of a state agency's lands for the development and production of minerals, as follows:

"A person desiring to lease from a state agency shall make application with deposit to the agency in the same manner as is set forth in R.S. 30:125 for application with deposit to the mineral board. The agency shall itself advertise, receive bids at its domicile, and lease in the same manner and subject to the same restrictions applicable to leases by the State Mineral Board under R.S. 30:126 and 30:127. The agency has the same powers over leases granted by it as are granted the State Mineral Board in R.S. 30:129."
[6] "The History and Regulation of the Shell Dredging Industry in Louisiana", compiled by The Louisiana Wildlife and Fisheries Commission (September, 1968). This report was filed in the record as "Appendix D" to Intervenors' brief in opposition to plaintiffs' motion for summary judgment and in support of Intervenors' cross-motion for summary judgment.