560 So.2d 976 (1990)
SIERRA CLUB, et al.
v.
LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES.
No. 89-CA-1562.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1990.
*977 Michael Osborne, Christopher Gobert, Osborne & McComiskey, New Orleans, for plaintiffs-appellants Sierra Club, et al.
Donald E. Puckett, Baton Rouge, for defendant-appellee Dept. of Wildlife and Fisheries.
James A. Burton, Susan F. Clade, J. Thomas Hamrick, Jr., Simon, Peragine, Smith & Redfearn, New Orleans, for Intervenor and appellee Dravo Basic Materials Co., Inc.
Before KLEES, BYRNES and PLOTKIN, JJ.
KLEES, Judge.
Plaintiffs appeal from the trial judge's denial of their claim for attorneys' fees. We affirm.
Two years ago, plaintiffs obtained a declaratory judgment in the district court holding that three shell dredging leases executed previously by the Louisiana Department of Wildlife and Fisheries were invalid because they had been privately negotiated in violation of the public bid law. That judgment was affirmed by this court in Sierra Club v. Louisiana Department of Wildlife and Fisheries, 519 So.2d 836 (La.App. 4th Cir.1988), writs denied, 521 So.2d 1151, 1152 (La.1988). After the judgment became final, plaintiffs filed an amended petition seeking attorneys fees for their efforts in obtaining the declaratory judgment. The trial judge summarily denied this relief, entering judgment on the pleadings with the notation "Denied. Not entitled to as a matter of law." After reviewing the issue, we agree with the trial judge that plaintiffs are not entitled to attorneys fees in this instance.
Plaintiffs assert that they are entitled to attorneys fees by virtue of the "common fund" exception to the general rule that each party in litigation bears its own costs. Conversely, defendants assert that the trial judge was correct in denying plaintiffs' claim for two reasons: (1) An amended petition cannot properly be filed in a case which has been fully disposed of by means of a final judgment; and (2) The facts of this case do not fall under the "common fund" exception for awarding attorneys fees.
In general, defendants are correct in asserting that once a final judgment has been rendered, there can be no amended petition because there is no longer a petition before the court to amend. Templet v. Johns, 417 So.2d 433 (La.App. 1st Cir.1982). Nevertheless, where a declaratory judgment has been sought and rendered, as here, article 1878 of the Code of Civil Procedure allows the court to grant further relief based upon that judgment whenever "necessary or proper." Although technically such relief is to be sought by means of a petition rather than an amended petition, this article has been used to authorize a petition seeking attorneys fees from a declaratory judgment action. Blaise Parking and Enterprises Corp. v. Project Square 221, 409 So.2d 691 (La.App. 4th Cir.1982). Therefore, plaintiffs at least arguably had the right to file the amended petition.
We need not decide this issue, however, because we are convinced that as a matter of law, plaintiffs are not entitled to attorneys fees in this situation. It is well established that attorneys fees are not recoverable except where expressly provided by law, statute or contract. Huddleston v. Bossier Bank & Trust Co., 475 So.2d 1082 (La. 1985). The only authority cited by plaintiffs as support for their claim are cases construing the so-called "common fund" doctrine, which allows a court, in its discretion, to award attorneys fees and court costs to a party who at his own expense has "maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense or brought into court, a fund in which others may share...." In re Interstate Trust & *978 Banking Company, 235 La. 825, 106 So.2d 276, 280 (1958).
Plaintiffs theorize that their efforts have created such a common fund because, following the court's declaration invalidating the leases, the Department of Wildlife and Fisheries rebid the leases according to the public bid law and received substantially more for them, thus creating a "fund" of increased royalties to benefit the citizens of Louisiana. This argument is flawed in several respects, and is more than a little ironic under the circumstances.
First, plaintiffs never sought to create any such fund; rather their public objective for initiating the lawsuit was and still is to eliminate all shell dredging leases in Louisiana. To this end, plaintiffs are currently in court challenging the newly issued leases as being invalid on various grounds. Secondly, the "fund" in question was not created solely through the efforts of plaintiffs in obtaining the declaratory judgment, but came about primarily because the defendant Department of Wildlife and Fisheries put the leases up for rebid after they were declared invalid and received more money for them.
Plaintiffs cite several cases applying the common fund doctrine as support for their claim, none of which are factually similar to the instant situation. In Louisiana State Mineral Board v. Abadie, 164 So.2d 159, 168 (La.App. 1st Cir.1964), one of the cases relied upon by plaintiffs, the court stated that the test to be applied to determine the applicability of the common fund doctrine is whether "the attorney alone and unaided performed the legal services necessary to create, preserve, protect or increase the fund." In this case, the test is obviously not met because the so-called "fund" could not have come about without the efforts of the defendant in putting the leases up for rebid. This is not a case in which plaintiffs sought to create or preserve a fund on behalf of others; the so-called "fund" was unwittingly created as a byproduct of both plaintiffs' action and the reaction of the State of Louisiana to its initial defeat in court. Under the circumstances, we do not find the common fund doctrine to be applicable to the instant situation. The trial judge did not abuse his discretion in denying plaintiffs' petition for attorneys fees, as these fees are not recoverable as a matter of law.
Accordingly, we affirm the judgment of the district court.
AFFIRMED.
PLOTKIN, Judge, dissents with written reasons:
I respectfully dissent because law and equity require the court to award an attorney reasonable fees out of a common fund created, protected, preserved or increased by the labor of that attorney, which benefits a class of persons who are not the clients of the attorney, because the common fund would not exist for their benefit without the labor of the attorney.
The common fund doctrine is well established in the law of the United States and of the State of Louisiana. Its origin has been traced back to the equity courts in England, which, as early as 1278, were authorized to award attorneys' fees to successful plaintiffs. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, n. 18, 95 S.Ct. 1612, 1616, n. 18, 44 L.Ed.2d 141 (1975), citing Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967).
The American Rule is that a prevailing litigant is not permitted to collect attorneys' fees from the losing litigant. Alyeska, supra, 421 U.S. at 247, 95 S.Ct. at 1616. The common fund doctrine is a well recognized exception to the American rule. Under the common fund doctrine, a
court of equity or a court in the exercise of equitable jurisdiction may, in its discretion, order an allowance of counsel fees to a complainant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him.
20 Am.Jur.2d "Costs," Sec. 84.
The basis for this rule is the principle against unjust enrichment: "persons who *979 obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). When one litigant has borne the burden and expense of litigation which has resulted in the benefit of others, those who share in the benefits should contribute to the expense. 20 Am.Jur.2d "Costs," Sec. 84. The common fund doctrine rectifies the inequity of unjust enrichment by requiring every member of the benefiting class to share attorneys' fees to the same extent he or she shares in the fund. Boeing, supra, 444 U.S. at 480, 100 S.Ct. at 750. Thus when an ascertainable class of persons derives a substantial benefit from a successful litigation, the court can apportion the costs proportionally among them. Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). Since the attorneys' fees are taxed against the fund, which is not itself a party to, but rather a result of, the litigation, the common fund doctrine is consistent with the American Rule against taxing attorneys' fees to the losing party. Boeing, supra, 444 U.S. at 481, 100 S.Ct. at 750-51.
Justice Marshall, in dissent, proposed criteria to help a court discern when attorneys' fees under the common fund doctrine were appropriate. Attorneys' fees should be paid out of a common fund when "(1) the important right being protected is one actually or necessarily shared by the general public or some class thereof; (2) the plaintiff's pecuniary interest in the outcome, if any, would not normally justify incurring the cost of counsel; and (3) shifting that cost to the defendant would effectively place it on a class that benefits from the litigation." Marshall, J., dissent, Alyeska, supra, 421 U.S. at 285, 95 S.Ct. at 1635. These criteria were developed in an environmental case and are met in the instant case.
The common fund doctrine is likewise recognized in the law of Louisiana. In Re Interstate Trust & Banking Co., 235 La. 825, 106 So.2d 276, 278 (1958). That case, citing 14 Am.Jur. "Costs," Sec. 74, would allow attorneys' fees to a complainant or attorney who, at his or her own expense, maintained a successful suit for the creation, protection, preservation or increase of a common fund. Id., 106 So.2d at 278. The basis for this rule is that when a litigant has borne the expense of litigation which has resulted in the benefit of others, those who share in the benefits should contribute to the expense. Id.
The Sierra Club filed this litigation seeking to protect important rights of the general public. The Sierra Club itself had no pecuniary interest in the outcome. The assessment of attorneys' fees on the basis of the common fund doctrine, would let the class which benefited from the outcome of the case bear the costs proportionately.
The common fund doctrine is grounded first of all upon the existence of a common fund. Such a fund is one which exists for the benefit of persons other than the attorney who litigated the case and his or her client(s). Boeing, supra, 444 U.S. at 478, 100 S.Ct. at 749. The doctrine has also been called the "common benefit" exception to the American Rule. Alyeska, supra, 421 U.S. at 245, 95 S.Ct. at 1616. The doctrine relates to cases in which a plaintiff's successful litigation results in a "substantial benefit" to a class of persons not party to the case. Hall, 412 U.S. at 5, 93 S.Ct. at 1946. The key to understanding the nature of such a "common fund" in all the above cases is the fact that it benefits a class of persons who were not party to the case.
In the instant case, before plaintiff's successful litigation, the State of Louisiana was paid twenty-seven cents per cubic yard for shells dredged under the existing leases. The litigation caused the existing leases to be declared invalid. When the State put new leases up for public bid, it received ninety cents per cubic yard for oyster shells, and one dollar, twenty-seven cents per cubic yard for clam shells. In a letter dated October 4, 1988, from the Department of Wildlife and Fisheries to Dravo Materials, the additional royalties for the period from May 1 through August 31, 1988, were $631,194. Royalties paid under the new leases are accruing in the millions *980 of dollars to the benefit of the State and of Iberia, St. Mary, and Terrebonne parishes, now intervenors in the litigation. While the total amount of the common fund has not yet been judicially determined, it should be ascertainable from the State's records of the quantity of shells dredged under the new leases.
The second question is whether this common fund was created, protected, preserved or increased by the labor of the Sierra Club and its attorneys. Courts have held that the beneficiary of the common fund doctrine can be either the attorney or the client. Interstate Trust, supra, 106 So.2d at 278; Louisiana State Mineral Board v. Abadie, 164 So.2d 159, 166 (La. App. 1 Cir.1964). This court does not have facts before it to show whether or not counsel was paid by the Sierra Club. But this is immaterial under the common fund doctrine. Whichever party, attorney or client, paid the expenses should be reimbursed out of the common fund.
The court must determine whether the labor of the Sierra Club and its attorneys did, in fact, create, protect, preserve, or increase a common fund. The First Circuit held that the test to be applied "is whether or not the attorney alone and unaided performed the legal services necessary to create, preserve, protect or increase the fund." Louisiana State Mineral Board, supra, at 168 (La.App. 1 Cir.1964). These words are cited as the basis for the majority decision in the instant case, holding that in this case the test is not met because the creation of the fund came about through the efforts of the defendant, not through the efforts of plaintiffs' counsel alone. There are two problems with this approach. First, in this case it is not the creation, but the increase of an existing common fund that is in question. Second, in the Abadie decision, plaintiff's attorney, J.C. Henriques, Jr., did not, in fact, create the fund by himself alone. Henriques worked with another attorney, Henican, to draft and secure passage of legislation which made the mineral leases possible, thereby creating the fund. When the act was declared unconstitutional, Henriques alone appealed and obtained reversal of that decision. Thus Henriques' work "alone" was for the preservation, not the creation, of the common fund. In this case attorneys' fees were awarded to Henriques. Id. at 170.
In this case, the Sierra Club filed the suit seeking a declaratory judgment that three shell dredging leases granted by the Louisiana Wildlife and Fisheries Commission, were invalid on three grounds: 1) violation of the public bid requirement, 2) the nonresident status of one lessee, and 3) the leases unlawfully allowed removal of shells from water bottoms instead of only from reef formations. Sierra Club v. Dept. of Wildlife, 519 So.2d 836, 837 (La.App. 4 Cir.), writ denied, 521 So.2d 1152 (1988). The Sierra Club was successful in the trial court. On appeal, this court reversed on the residency requirement and the restriction to reef formations, but affirmed on the public bids requirement. Id., at 842. As a result, the state was required to reoffer the leases at public bid. The defendant did not comply with this decision. The Sierra Club obtained a preliminary injunction enjoining shell dredging activities under the old leases. When defendants still did not comply, the Sierra Club filed rules for contempt. All the work performed by plaintiffs' counsel since the January 14, 1988, decision of this court has been for the preservation of the existing common fund, which had been greatly increased as a result of the initial suit filed by the Sierra Club.
The third question is whether the common fund in question benefits a discernible class of persons. This fund benefits the State of Louisiana, and through it, all the citizens of Louisiana, and it also benefits the three parishes in which the shell dredging leases are located, and the residents of these parishes. Under the equitable common fund doctrine, these political entities and the residents thereof would be unjustly enriched at the expense of the attorneys who did the work creating, protecting, preserving or increasing the common fund if attorneys' fees are not paid proportionally out of said fund. Boeing, supra, 100 S.Ct. at 749; Interstate Trust, supra, 106 So.2d at 278.
*981 In the case of public interest litigation, the successful outcome generally benefits the entire population in the area in question. The complainant, although bearing the expense, does not personally benefit more than other citizens. Therefore, in the interest of justice and equity, it is important to reimburse the complainant and its counsel for their work out of the benefits which their work has created, protected, preserved or increased.
For the above reasons, I would reverse the trial court and grant attorneys' fees out of the common fund. Therefore, I respectfully dissent from the majority opinion.