FREDERICKA HOMBERG WICKER, Judge.
 

 |2This is a workers’ compensation subro-gation proceeding in which the employer’s workers’ compensation insurer seeks to recover from the manufacturer of an extruder the amounts it paid or may pay in workers’ compensation benefits as a result of an alleged workplace accident involving the extruder. The manufacturer filed a reconventional demand
 
 [1]
 
 against the insurer in which it alleged the following claims: (1) spoliation of evidence; (2) mishandling of the workers’ compensation claim; and, (3) quantum meruit. The trial judge granted the workers’ compensation insurer’s exception of no cause of action and dismissed the reconventional demand. For the following reasons, we affirm.
 

 Proceedings Below
 

 Zurich American insurance Company, plaintiff/appellee, (Zurich) filed a petition for damages in August 2004 against Queen’s Machinery Co., Ltd., defendant/appellee (Queen’s). Zurich alleged that on or about September 1, 2003 Nhut Nguyen, an Alpine Plastics, Inc. (Alpine) employee, suffered an accident for | -¡which Zurich, as Alpine’s workers’ compensation carrier, paid and may continue to pay workers’ compensation benefits.
 
 [2]
 

 Zurich alleged that Mr. Nguyen suffered an electrocution injury while working with the Queen’s extruder. It alleged that it would not have had to pay the workers’ compensation benefits had it not been for Queen’s negligence and/or fault.
 

 Mr. Nguyen intervened in the suit in July 2005. He intervened individually and as the natural tutor of his wife and children. He sought damages from Queen’s for himself and loss of consortium for the other family members, alleging that he sustained serious and disabling injuries as a result of the accident.
 

 A few weeks later, Queen’s filed a notice of removal to the United States District Court for the Eastern District of Louisiana. The following year, in September 2006, Queen’s filed a “counterclaim” to Zurich’s petition for damages. Among its defenses, Queen’s pleaded alternatively that Zurich had the right to require Alpine to preserve the evidence related to the accident but that instead Zurich allowed the evidence to be lost and/or destroyed at a time when Zurich was on notice of a potential subrogation claim against Queen’s.
 

 In addition to the defense that Zurich failed to preserve the evidence, Queen’s pled as a “counterclaim” the independent tort of spoliation of the evidence. Queen’s alleged the following:
 

 Zurich, as Alpine’s workers’ compensation insurer, operated under a contract of insurance that provided in the event of an injury to an Alpine employee, Zurich had the right to control Alpine in all matters related to that injury. Specifically, Alpine had an obligation to cooperate with and assist Zurich in the investigation of any claim. And Alpine had an obligation to do everything to | ¿preserve Zurich’s right to
 
 *94
 
 assert subrogation rights against third parties. Also, that contract of insurance provided that in the event of an injury to an employee, Alpine had the obligation to give Zurich and/or Zurich’s agent the name and addresses of witnesses and other information that Zurich requested.
 

 On September 1, 2003, Mr. Nguyen was allegedly injured while working in the course and scope of his employment with Alpine. One week later, Zurich received notice of the employee’s alleged injury. About two weeks after the alleged accident, Jack Scheinuk, Zurich’s agent, through his employee, contacted Zurich and requested information regarding Mr. Nguyen’s claim. Zurich appointed its employee Renee Marquez as the workers’ compensation adjuster (file handler), and Ms. Marquez communicated with Joseph B. Guilbeau, the workers’ compensation defense counsel.
 

 Before this incident, Mr. Guilbeau had defended a spoliation of evidence claim asserted against Alpine. As a result, Zurich was on notice of the need to instruct Alpine to preserve all evidence associated with Mr. Nguyen’s alleged injuries.
 

 Ms. Marquez contacted Alpine and received information regarding the incident. But Ms. Marquez gave Alpine no instructions regarding the preservation of evidence. On or before September 19, 2006, Mr. Scheinuk requested that Zurich’s legal personnel and Zurich’s engineering personnel investigate Mr. Nguyen’s alleged accident. Around that date, Mr. Scheinuk, acting on behalf of Zurich, inspected the extruder and took photographs. That date, Mr. Scheinuk provided the photographs of the extruder to Ms. Marquez and advised her to make a subrogation demand on behalf of Zurich against Queen’s. Later that date, Ms. Marquez forwarded the photographs to Daphne Hasten, a subrogation adjustor, and instructed her to call Mr. Scheinuk so that the subrogation could proceed. On the |fisame day, Zurich’s counsel communicated by letter with Ms. Hasten and Ms. Rhonda Kleinman, another subrogation adjustor. Therefore, before the end of September 2003 Zurich was developing its subrogation claim against Queen’s and had decided to file suit against Queen’s. At no time during this period did Zurich take custody of the evidence or instruct Alpine to preserve evidence relevant to the claim.
 

 During the following month, Alpine contacted Mr. Scheinuk and inquired whether Zurich’s investigations would interfere with Alpine’s operations. Mr. Scheinuk told Alpine that there may be a need to shut down the machine. Mr. Scheinuk, however, gave Alpine no instructions regarding preserving the evidence nor did he request custody of the machine or any of its component parts. As a result, Alpine did not preserve and it did in fact discard crucial evidence related to Mr. Nguyen’s alleged accident, including but not limited to the configuration of the extruder and the heater bands and physical evidence of or the lack of physical evidence of the alleged accident. Also, although Alpine did locate component parts from other heater bands, Alpine could not produce the actual heater band or Allen wrench allegedly involved in Mr. Nguyen’s accident. Zurich’s failure to preserve or to direct its insured to preserve all evidence related to Mr. Nguyen’s alleged accident has harmed Queen’s. Accordingly, Queen’s requested that in the event it is found liable, in whole or in part, for Mr. Nguyen’s alleged injuries and ordered to pay damages on the principal demand to Zurich and/or to the Nguyens, then there be judgment holding Zurich liable to Queen’s on this “counterclaim” and that Zurich be ordered to pay damages to Queen’s in an amount commensurate with any amount that Queen’s
 
 *95
 
 is ordered to pay on the principal demand.; Queen’s sought to have judgment in its favor dismissing Zurich’s petition for damages with prejudice or alternatively in the event that Queen’s is cast in judgment, that ^judgment also be entered in favor of Queen’s against Zurich on Queen’s’ “counterclaim” in an amount commensurate with any amount awarded to Zurich and the Nguyens.
 

 Later, in 2006, The United States District Court for the Eastern District of Louisiana remanded the case to the 24th judicial District Court for the Parish of Jefferson for lack of subject matter jurisdiction.
 

 The following year, Queen’s filed an unopposed motion for leave to amend its “counterclaim.” The trial judge granted the motion.
 

 In its amended counterclaim, Queen’s added two alternative claims — “mishandling of claim” and “quantum meruit.”
 

 In its “mishandling claim,” Queen’s alleged the following:
 

 During the course of discovery, Queen’s learned that Zurich employees failed to properly investigate and administer the medical portion of Mr. Nguyen’s workers’ compensation claim. Zurich employees failed to obtain the most important set of medical records pertinent to Mr. Nguyen’s workers’ compensation claim. These records show that Mr. Nguyen was not paralyzed, despite his alleged presentation of paralysis symptoms. Zurich employees failed to communicate the information in those medical records to other medical providers. Also, Zurich employees failed to communicate properly information included in other medical records to their management showing that doctors’ conclusions regarding Mr. Nguyen’s paralysis symptoms were inconsistent and that no basis existed to pursue a claim against Queen’s. In fact, Zurich employees took affirmative steps to conceal or explain away inconsistencies in the medical records. Had Zurich employees properly investigated and administered the medical portion of Mr. Nguyen’s workers’ compensation claim and communicated the information available to medical providers and Zurich management, Zurich would not have |7paid workers’ compensation benefits to Mr. Nguyen to the extent it did, if at all, and would have had no basis to pursue a subrogation claim against Queen’s. Thus, but for Zurich’s errors in handling Mr. Nguyen’s workers’ compensation claim, Zurich would not have pursued a subrogation claim against Queen’s and Queen’s would not have incurred the attorney fees, expert fees, and expenses associated with investigating and defending Zurich’s sub-rogation claim. Accordingly, Queen’s sought damages in attorney fees and expenses incurred investigating and defending Zurich’s subrogation claim. Queen’s presented rather detailed allegations regarding Zurich employees’ alleged mishandling of the claim.
 

 In its “Quantum Meruit” claim, Queen’s alleged the following:
 

 During the course of discovery, Queen’s investigated Mr. Nguyen’s workers’ compensation claim. Queen’s discovered evidence favorable to Queen’s that Mr. Nguyen is not paralyzed. Instead, he suffers from a hysterical psychosis or, is malingering. Zurich will benefit from this information, which Queen’s obtained at its cost. Therefore, Queen’s requests that Zurich be ordered to reimburse Queen’s in an amount equal to its attorney fees and expenses incurred investigating and defending Zurich’s subrogation claim. Queen’s provided detailed allegations regarding the expenses it incurred in investigating the workers’ compensation claim.
 

 
 *96
 
 Zurich filed an exception of no cause of action with respect to Queen’s “counterclaims.” Zurich asserted that the petition failed to state a cause of action for spoliation of evidence, and for attorney’s fees, investigation, and defense expenses. The trial judge granted the exception and dismissed the reconventional demand.
 

 Queen’s argues that the trial judge erred in dismissing the claims for these reasons: (1) Allegations that Zurich had control over the alleged defective product |aand failed to preserve it, and knowing it would file suit against Queen’s, are sufficient to state a spoliation of evidence cause of action against Zurich. (2) Allegations that Zurich’s file handler misrepresented medical information to her superiors and doctors retained by Zurich and such misrepresentations caused Queen’s to incur attorney fees and litigation expenses are sufficient to state a cause of action against Zurich.
 

 Analysis
 

 The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition.
 
 Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission,
 
 94-2015, p. 5, n. 3 (La.11/30/94), 646 So.2d 885, 888, n. 3. The function of the exception is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.
 
 Everything on Wheels Subaru, Inc. v. Subaru South,
 
 616 So.2d 1234, 1235 (La.1993). No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La.C.C.P. art. 931. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.
 
 City of New Orleans v. Board of Commissioners,
 
 93-0690, p. 1 (La.7/5/94), 640 So.2d 237, 241 (Citations omitted). In reviewing a trial court’s ruling sustaining an exception of no cause of action, the appellate court should subject the case to
 
 de novo
 
 review because the exception raises a question of law and the trial court’s decision is based only on the sufficiency of the petition.
 
 City of New Orleans,
 
 93-0690 at 28, 640 So.2d at 253 (Citations omitted). A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle lühim to relief.
 
 Fink v. Bryant,
 
 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349 (Citation omitted).
 

 Spoliation
 

 Queen’s argues that it has alleged facts to support a cause of action for negligent or intentional spoliation of evidence. Furthermore, the spoliator need only have control of the evidence rather than possession of the evidence. On the other hand, Zurich argues that there is only a cause of action for the tort of intentional spoliation of evidence. As such, there is no allegation that Zurich intentionally destroyed evidence or that Zurich ever had possession of the evidence. In fact Queen’s alleges that at no point did Zurich take custody of the evidence or instruct Alpine to preserve evidence.
 

 In
 
 Pham v. Contico International Inc.,
 
 99-945, p. 4 (La.App. 5 Cir. 3/22/00), 759 So.2d 880, 882 (citation omitted), we explained that the theory of “spoliation of evidence” refers to an intentional destruction of evidence for the purpose of depriving opposing parties of its use. The tort of spoliation of evidence has its roots in the evidentiary doctrine of “adverse presumption,” which allows a jury instruction for the presumption that the destroyed evi
 
 *97
 
 dence contained information detrimental to the party who destroyed the evidence unless such destruction is adequately explained.
 
 Id.
 
 (Citations omitted).
 

 Pham
 
 held that a plaintiff must allege an intentional destruction of evidence to assert a cognizable claim for spoliation of evidence.
 
 Id.
 
 99-945 at 7, 759 So.2d at 883-84. A plaintiff asserting a state law tort claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence. Allegations of negligent conduct are insufficient.
 
 Longwell v. Jefferson Parish Hosp. Service Dist. No. 1,
 
 07-259, p. 7 (La.App. 5 Cir. 10/16/07), 970 So.2d 1100, 1104,
 
 writ denied,
 
 07-2223 (La.1/25/08), 973 So.2d 756,
 
 citing Pham,
 
 99-945 at 4, 759 So.2d at 882;
 
 Quinn v. RISO Investments, Inc.,
 
 03-0903, p. 5 (La.App. 4 Cir.3/3/04), 869 So.2d 922, 927,
 
 writ denied,
 
 04-0987 (La.6/18/04), 876 So.2d 808.
 
 Accord: Desselle v. Jefferson Hosp. Dist. No. 2,
 
 04-455, p. 15 (La.App. 5 Cir. 10/12/04) 887 So.2d 524, 534.
 

 Longwell, supra,
 
 cited jurisprudence that held the duty to preserve evidence for the plaintiff could also arise from a statute, a contract, a special relationship between the parties, or an affirmative agreement or undertaking to preserve the evidence.
 
 Id.,
 
 07-259 at 8, 970 So.2d at 1104-1105. In
 
 Longwell,
 
 the court found that the defendant hospital had a statutory duty to preserve the evidence for the plaintiff. The court distinguished that case from
 
 Pham.
 
 It recognized, under those facts, a cause of action in negligence for spoliation arises when a defendant has a statutory obligation to preserve evidence. 07-259 at 8-9, 8, n. 9, 970 So.2d at 1104-1105, 1105, n. 9. Here, there is no statutory duty on the part of Zurich to preserve evidence. There was no affirmative agreement or undertaking on Zurich’s part to preserve the evidence. And, the workers’ compensation insurance policy does not satisfy the relationship or the contractual prong of the test because the contract was not a contract between Queen’s and the insurer.
 
 Accord: Dardeen v. Kuehling,
 
 213 Ill.2d 329, 336-37, 290 Ill.Dec. 176, 821 N.E.2d 227, 231-32 (Ill.2004).
 
 See also, Timber Tech Engineered Bldg. Products v. The Home Ins. Co.,
 
 118 Nev. 630, 634, 55 P.3d 952, 954-55 (Nev.2002) (The liability insurers for the property owner and the general contractor owed no duty in tort to a subcontractor to preserve debris. The insurers’ agreement with the owner and general contractor to preserve evidence did not create a tort duty to the subcontractor).
 

 Therefore, we decline to extend the
 
 Longwell
 
 exception to the factual scenario presented here.
 

 In Queen’s argues that it met the “intent” pleading requirements of the above jurisprudence for two reasons. First, it alleged that Zurich knew it would file suit against Queen’s prior to the time the evidence was discarded. Second, it alleged that “Alpine did not preserve and did in fact discard crucial evidence related to Nguyen’s alleged accident, including but not limited to the configuration of the extruder and the heater bands and physical evidence of or the lack of physical evidence of the alleged accident.”
 

 Additionally, Queen’s argues that its allegations that Zurich had control of the extruder, although not possession, are sufficient to state a spoliation cause of action against Zurich. Queen’s asserts that by virtue of the Zurich workers’ compensation policy with Alpine, Zurich had the right to control Alpine and to do everything to preserve Zurich’s rights to assert subrogation rights against third parties.
 

 Even if true, Queen’s alleged only negligent conduct. Queen’s failed to allege that either Zurich or Alpine intentionally de
 
 *98
 
 stroyed evidence. Since allegations of negligent conduct are insufficient, the trial judge did not err in granting the exception of no cause of action and dismissing the spoliation claim.
 

 Misrepresentation Claim and Attorney’s Fees
 

 Queen’s does not dispute Zurich’s right to pursue legitimate subrogation claims. However, Queen’s argues that in this case, Zurich should be held liable and required to pay damages, including attorney fees because of its employees’ misrepresentations. Queen’s asserts that its misrepresentation claim sets forth allegations sufficient to plead both intentional and negligent misrepresentation claims against Zurich, which is vicariously liable for the torts of its employees. The crux of Queen’s argument is that Zurich employees’ misrepresentations 112caused Zurich to erroneously pay workers’ compensation benefits. Hence such misrepresentations caused Queen’s to incur attorney fees and litigation expenses.
 

 In
 
 Smith v. State, Dept. of Transp. & Development,
 
 04-1317, p. 17 (La.3/11/05), 899 So.2d 516, 525,
 
 citing Huddleston v. Bossier Bank and Trust Co.,
 
 475 So.2d 1082 (La.1985), the Louisiana Supreme Court determined that attorney fees are not allowed except where authorized by contract or statute. The prohibition is known as the “American Rule.”
 
 See: Sierra Club v. Louisiana Dept. of Wildlife and Fisheries,
 
 560 So.2d 976, 978 (La.App. 4 Cir.1990) (Plotkin, J. dissenting),
 
 citing Alyeska Pipeline Service Co. v. Wilderness Society,
 
 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975).
 

 Queen’s points to neither statutory nor contractual authority to support an award of attorney’s fees for its defense. Instead, it asks this court to recognize the Restatement of Torts “tort of another” exception to the “American Rule.”
 
 [3]
 
 The Restatement refers to the tort of another which causes a party to file suit against a third party or defend itself in a suit brought by a third party.
 

 Queen’s asserts that the Louisiana Supreme Court recognized such a tort in
 
 Ramp v. St. Paul Fire & Marine Ins. Co.,
 
 263 La. 774, 786-92, 269 So.2d 239, 244-46 (La.1972). That case is distinguishable.
 
 Ramp
 
 involved an attorney malpractice claim against former counsel. The court allowed recovery for the cost of litigation later engaged in to recover the heirs’ unencumbered legitime.
 
 [4]
 

 haWe decline to recognize such an independent tort under these factual circumstances. Rather, we find that
 
 Matter of Interdiction of Thomson,
 
 602 So.2d 300, 300 (La.App. 3 Cir.1992) governs.
 

 In
 
 Thomson,
 
 the plaintiff sued for the interdiction of her father. He answered the suit, denying the allegations of incapacity. He also alleged that the action was frivolous, and that the plaintiff should be cast for his damages as a result of embarrassment and humiliation, and as a result of the expenses he had incurred in defending the action. The court found that the lawsuit was frivolous when the defendant introduced the report of the court-appointed physician indicating that the father suffered from no disabilities. The court awarded damages, which included the court-appointed doctor’s fee, the plaintiffs
 
 *99
 
 attorney’s fees, and a damage award. The plaintiff appealed. The court affirmed the dismissal of the main demand on the basis that the plaintiff failed to appear on the day set for trial. The court affirmed the assessment of costs against the plaintiff, including the assessment of the doctor’s fee as an item of costs.
 

 However, the court reversed and set aside the damage awards. The court reasoned:
 

 The order setting the case for trial summarily and with preference pertained to the interdiction only. The demand for damages in the answer and prayer in [the father’s] answer cannot be treated as a motion for sanctions under La.C.C.P. art. 863. Our Article 863 has its source in Federal Rule 11. Under that rule, as interpreted by the federal courts, a claim for sanctions may not be raised as a counterclaim, but may only be raised by motion.
 
 Lenoir v. Tannehill,
 
 660 F.Supp. 42 (S.D.Miss.1986). If the hearing in the present case was intended to be a sanctions hearing, it was in violation of La.C.C.P. art. 868(E), because no motion for sanctions was ever made and the plaintiff and her counsel never received any notice of such a hearing. It is a matter of due process.
 
 Tom Grouwney Equip. v. Shelley Irr. Development,
 
 834 F.2d 833 (9th Cir.1987).
 

 The defendant’s demand for damages asserted in its answer can only be treated as a reconventional demand. This demand was improperly considered. The cause of action asserted in the re-conventional demand |ucould not arise prior to the final determination of plaintiffs claim, and therefore it did not yet exist. It was subject to an exception of no cause of action.
 
 Thomas v. Mobley
 
 118 So.2d 476 (La.App. 1st Cir.1960);
 
 Ortiz v. Barriffe,
 
 523 So.2d 896 (La.App. 4th Cir.),
 
 writ denied,
 
 531 So.2d 273 (La.1988); see, also, Justice Watson’s dissent in
 
 Union Service & Maintenance v. Powell,
 
 393 So.2d 94 (La.1980). On our own motion, we notice that the reconventional demand states no cause of action. La.C.C.P. art. 927. Accordingly, we dismiss and set aside the judgment as it pertains to the demands raised in defendant’s answer[.]
 

 Id.
 

 Therefore, the cause of action asserted in Queen’s reconventional demand could not arise prior to the final determination of Zurich’s claim, and hence it did not yet exist. Accordingly, the trial judge did not err in granting the exception of no cause of action. On the facts of the case, Queen’s has failed to state a cause of action for the alleged misrepresentation which allegedly caused Zurich to incur litigation expenses.
 

 Accordingly, for the reasons stated, the judgment granting the exception of no cause of action and dismissing Queen’s re-conventional demand is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . These pleadings were styled "counterclaims,” having first been filed in federal court.
 

 [2]
 

 . Zurich brought the employee-subrogation action pursuant to La.R.S. 23:1101(B).
 

 [3]
 

 .
 
 See, infra,
 
 note 3.
 

 [4]
 

 . We are also unpersuaded by Queen's reliance
 
 on Mills v. Ganucheau,
 
 416 So.2d 361, 365 (La.App. 4 Cir.1982). In that case, the Clerk of Court and the deputy clerk were held liable for the deputy’s failure to properly check court records before replying to a letter from the Los Angeles Police Department inquiring as to the legal custody of the minor children.